IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID ROBERT BENTZ, <br> # S-03210, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) Case No. 14-cv-01132-SMY <br> ) |
| MICHAEL ATCHINSON, <br> RICK HARRINTON, ET AL., | ) <br> ) <br> ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff David Robert Bentz, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

The matter is now before the Court for review of Plaintiff's complaint. (Doc. 1). The complaint outlines thirteen claims against forty Defendants. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court

1

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In a 124-page complaint (including exhibits), Plaintiff asserts multiple claims against forty Defendants. No doubt Plaintiff has numerous complaints against a multitude of parties, as evidenced by the many complaints he has filed over the last six years in the United States District Courts for the Northern, Central, and Southern Districts of Illinois. The Court appreciates that Plaintiff believes in earnest that officials within the Illinois Department of Corrections have repeatedly violated his constitutional rights. But, the Court wishes to impress upon Plaintiff that he does himself no favors when he "throw(s) all of his grievances, against dozens of parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012). District court judges, faced with exceedingly busy dockets, do their best to attend to inmate complaints in a timely and thorough fashion. But, as the Seventh Circuit noted in *Wheeler*, "The more claims and defendants in a complaint, the longer screening will take." *Id*.

Plaintiff's claims border on being unrelated and subject to severance, but for the fact that all of his claims stem (although sometimes rather loosely) from a disciplinary ticket that he was

issued in April 2012 and the sanctions he was subject to as a result of being convicted on that ticket. Plaintiff is warned that separate, unrelated claims belong in different suits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). With that said, the following facts are relevant to the Court's threshold review:

**First Disciplinary Ticket**

Plaintiff sent a letter to the Office of Inmate Issues on March 21, 2012 complaining about the conditions at Menard and Menard staff's refusal to address his grievances. (Doc. 1, Ex. 1). On April 9, 2012, Plaintiff asked Defendant Bebout if he could have access to the law library in order to meet a court deadline. Defendant Bebout responded, "I don't care about your deadlines" because Plaintiff "sues correctional officers." (Doc. 1, p. 7).

A few hours later, Defendant McClure and Kulick conducted a search of Plaintiff's cell. Following the shakedown, Plaintiff received a disciplinary report issued by Defendant McClure and signed by Defendants Lyerla, Moore, and Cowan. (Doc. 1, p. 5). The disciplinary report stated that the officer was searching a "personal property box" belonging to inmate Fuentes (Plaintiff's cellmate) and found a piece of metal approximately five inches long. (Doc. 1, Ex. 2). The disciplinary report referenced Fuentes property box number and made no mention of Plaintiff. *Id*. When Plaintiff's cellmate, Fuentes, was questioned by Defendant Moore, he informed Moore that the piece of metal belonged to him and that Plaintiff knew nothing about it. *Id*. at 5. Attached to the complaint is an affidavit signed by Fuentes, which states, "I informed the [Adjustment] Committee that it was mine and I plead guilty to the ticket. In the Adjustment Committee Final Summary Report they stated that I had pleaded not guilty even though I did plead guilty." (Doc. 1, Ex. 7).

Prior to receiving the disciplinary report, Defendants Baker and John Doe Badge #3835

3

informed Plaintiff that he was being issued a fake disciplinary report because he had filed lawsuits against correctional officers. They also threatened to take Plaintiff into the shower and beat him if he filed any more lawsuits. (Doc. 1, p. 5). Plaintiff was then taken to the bullpen where he was told by Defendants Bebout, Baker, and John Doe Badge # 3835 "that's what you get for [filing] lawsuits: segregation." *Id*.

Plaintiff and Fuentes were placed in segregation pending a disciplinary hearing. The next day, Plaintiff was taken to see Defendant Cowan, an officer with internal affairs, and questioned about the incident. (Doc. 1, p. 8). Plaintiff denied having any knowledge of the contraband. Defendant Cowan told Plaintiff that if he didn't file lawsuits, things like this would not happen. *Id*.

On April 12, 2012, Plaintiff appeared before Defendants Robert Hughes and David Johnson, members of the Adjustment Committee, and pled not guilty to the charge of possessing dangerous contraband. (Doc. 1, Ex. 4). The Committee found him guilty and punished him with 6 months C Grade, 6 months segregation, 6 months commissary restriction, and 6 months loss of good conduct credit ("GCC"). *Id*. According to the Adjustment Committee's final summary report, the decision was based on the following findings, "R/O was conducting a routine shake down of cell east 5-17 occupied by inmate Bentz S03210 and inmate Fuentes M08880. R/O found in inmate Bentz property box in a soft pastel box one piece of metal approx.. five inches long." *Id*.

Plaintiff asserts that the Adjustment Committee refused to allow him to present evidence in his defense. (Doc. 1, Ex. 6, p. 2). When Plaintiff attempted to hand Defendants his exhibits, he was told, "I don't need this shit!" (Doc. 1, p. 9). Defendant Atchison (Chief Administrative Officer at Menard) signed off on the Adjustment Committee's findings on April 24, 2012. (Doc.

4

1, Ex. 4).

Plaintiff filed a grievance regarding the Adjustment Committee's findings, which was denied by Defendant Oakley. (Doc. 1, Ex. 10). Oakley's findings stated, "Both Bentz and Fuentes pled not guilty to the charge, and in the case where no one admits guilt, both inmates that are housed in the same cell are found guilty. Even though the metal was confiscated from box # 058508 (Fuentes), there is no way of knowing who placed the metal in the box. The possibility exists that Bentz could have placed the metal in the box without Fuentes's knowledge. All inmates are responsible for everything in their cells at all times." *Id*. Defendant Atchison concurred with Defendant Oakley's findings. *Id*.

Plaintiff appealed the decision to the Administrative Review Board ("ARB"). (Doc. 1, Ex. 11). On June 1, 2012, the ARB ordered a reduction in Plaintiff's discipline (including C Grade, segregation, and loss of commissary privileges) from six months to three months. *Id*. On September 28, 2012, Plaintiff was sent a letter notifying him that Defendant Godinez had "disapproved the revocation of six months good conduct credits" and that the revocation would be deleted from his disciplinary record. (Doc. 1, Ex. 22). However, a letter from Menard Correctional Center Records Office dated October 2, 2012 stated that the revocation of good conduct credit had only been reduced from six months to three months. (Doc. 1, Ex. 23).

On January 15, 2013, the ARB sent another letter to Plaintiff notifying him that the Office of Inmate Issues had reviewed his grievance and determined that "[d]ue to unsubstantiated charges, the [disciplinary ticket] is to be expunged from Bentz masterfile." (Doc. 1, Ex. 35). The disciplinary record was dismissed on February 7, 2013 (Doc. 1, Ex. 39, p. 6), but Plaintiff remained on "Weapons Violator" status. On March 12, 2013, Plaintiff filed a grievance regarding the fact that he was still designated a weapons violator. (Doc. 1, Ex. 39, p.

3). Two weeks later, the grievance counselor responded, "Placement office was notified and the offender will be issued a new I.D. card and have the black stripes removed." *Id*. On May 7, 2013, Plaintiff was moved off of the weapons violator gallery and received general population clothing.

**Conditions of Confinement in Segregation**

When Plaintiff was placed in segregation on April 9, 2012, he contends that he received only a soiled cloth mattress, but no pillow or cleaning supplies. (Doc. 1, p. 12). Plaintiff claims that the cell was covered in spit, urine, and food. In addition, the toilet was broken and leaked onto the floor. *Id*. Plaintiff notified Defendants Davis, Reid, Miller, Whitehopn, Mallory, and Lindenberg about the conditions, but they refused to address his concerns. Plaintiff was later moved to a different cell in segregation and given only a soiled cloth mattress, but no pillow or cleaning supplies. Plaintiff directed repeated requests for a non-soiled mattress, pillow, and cleaning supplies to the Defendants named above, but none of the Defendants addressed his concerns.

In addition, Plaintiff asserts that while he was in segregation, he endured excessive heat indexes (over 90 degrees) and was given only one cup of water and a half a cup of ice a day, if anything. *Id*. For two weeks of his time in segregation, the heat index hovered between 110 and 110 degrees. During this time, Plaintiff further contends that there was no ventilation in his cell. Plaintiff notified the same Defendants regarding the excessive heat, but none of them did anything to address the issue.

Moreover, Plaintiff maintains that his cell was cramped (he was forced to share the cell, which was designed to be a one-man cell, with another inmate) and unsafe. In the end, Plaintiff spent three months in segregation on the first disciplinary ticket.

On September 24, 2012, Plaintiff was returned to segregation for four days while two additional disciplinary tickets were being investigated and adjudicated. During that time, Plaintiff claims that he had to endure excessive heat, a lack of ventilation, unsanitary cell conditions, and he was again denied cleaning supplies. *Id*. at 18. He informed the following Defendants of the conditions: Davis, Reid, Miller, Kempfer, Mallory, Whitehopn, Lindenberg, and Dilday, but he contends that none of these Defendants did anything to address the conditions.

**Second and Third Disciplinary Tickets**

On September 23, 2012, Defendant Snell issued Plaintiff a disciplinary ticket charging Plaintiff with possessing dangerous contraband, damage or misuse of property, and gang or unauthorized organization activity. *Id*. at 17; Ex. 24. The next day, Defendant Forsting issued Plaintiff yet another disciplinary ticket charging him with intimidation or threats and insolence. Supervising officers (Rees, Evielsizer, and Moore) condoned the issuing of the disciplinary tickets. *Id*. at 17; Ex. 25. Plaintiff asserts that he was issued the "bogus" disciplinary tickets in retaliation for being designated a weapons violator. A few days later, Timothy Veath and David Johnson, members of the Adjustment Committee, dismissed both tickets due to insufficient information. *Id*.

**Weapons Violator Status**

On July 9, 2012, Plaintiff was released from disciplinary segregation and returned to general population based on the ARB's recommendation that his term of segregation on his first disciplinary ticket be reduced from six months to three months. *Id*. at 13. As noted above, this ticket was eventually expunged, but as of July 9, 2012, the first disciplinary ticket remained on Plaintiff's record.

7

In late July, Plaintiff was designated a "weapons violator" and moved to the west cell house (gallery eight), which was designated for weapons violators. *Id*. at 14. Pursuant to Menard Correctional Center, Procedural Bulletin FY13/IN-#13, Menard inmates who have been convicted of weapons violations and staff assaults are subject to the following sanctions: must wear black and white striped clothing at all times. In addition, they are not allowed to work, they are subjected to weekly cell searches and routinely patted down when entering and exiting areas, they are identified as weapons violators on their identification card, and they are only allowed to attend yard time with other weapons violators. *Id*. The "weapons violator" designation lasts for three years. Plaintiff contends that imposition of these additional sanctions violated his right to due process, since he was not given a hearing prior to him being identified as a weapons violator, and the sanctions exceed the recommendations of the adjustment committee. Plaintiff further asserts that being designated a weapons violator placed him at greater risk of retaliation by correctional officers.

While Plaintiff was housed in the weapons violator gallery, he claims that he never received any cleaning supplies, despite repeatedly requesting supplies from multiple Defendants. *Id*. In addition, Plaintiff states that his cell was unsafe. *Id*. Plaintiff was moved off the weapons violator gallery and received general population clothing and a regular identification card on May 7, 2013 – four months after he was notified that the first disciplinary action was being expunged.

**Failure to Protect**

From October 2012 until January 15, 2013, Plaintiff was housed with a cellmate who threatened and assaulted Plaintiff. *Id*. at 23. Plaintiff feared for his safety and repeatedly requested to be moved. *Id*. Plaintiff claims he personally notified Defendants Brookman,

Forsting, Rees, Atchinson, Knaver, Payne, and other officers within Internal Affairs about the volatile situation, but nothing was done. *Id*. Plaintiff was finally transferred to another cell after family members intervened on his behalf. *Id*. at 24.

Plaintiff seeks monetary damages and declaratory relief.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has articulated the following colorable federal claims, which shall receive further review:

> **Count 1:** First Amendment retaliation claim against Defendants McClure, Lyerla, Moore, Cowan, Baker, Kulick, and John Doe Badge #3835[1] for participating in and/or condoning the issuance of a false disciplinary report against Plaintiff on April 9, 2012; and against Defendant Bebout for denying Plaintiff access to the law library that same day in response to Plaintiff filing lawsuits against correctional officers.
>
> **Count 2:** Fourteenth Amendment due process claim against Defendants Hughs and Johnson for refusing to hear evidence in Plaintiff's defense at his disciplinary

---

[1] Plaintiff shall be allowed to proceed on this claim against John Doe Badge #3835. However, this individual must be identified with particularity before service of the complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *See Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 832 (7th Cir.2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of this unknown defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the complaint.

9

hearing on April 12, 2012 and finding Plaintiff guilty in the absence of any evidence in support of that conclusion.

**Count 3:** Eighth Amendment conditions of confinement claim against Defendants Davis, Reid, Miller, Whitehopn, Mallory, and Lindenberg for their deliberate indifference to the conditions of Plaintiff's confinement (namely excessive heat, unsanitary cell conditions, and lack of water) while he was in segregation from April 9, 2012 until July 9, 2012.

**Count 4:** Eighth Amendment conditions of confinement claim against Defendants Davis, Reid, Miller, Kempfer, Mallory, Whitehopn, Lindenberg, and Dilday for their deliberate indifference to the conditions of Plaintiff's confinement (namely excessive heat and unsanitary cell conditions) while he was in segregation from September 24, 2012 until September 28, 2012.

**Count 5:** Eighth Amendment conditions of confinement claim against Defendants Allen, Bebout, Brookman, Forsting, Dilday, Easton, Tourville, Snell, Korondo, Payne, and Ransom for the conditions he endured (namely unsanitary cell conditions) while housed within the weapons violator housing unit from July 2012 until May 7, 2013.

**Count 6:** Fourteenth Amendment due process claim against Defendants Godinez, Atchinson, Harrington, Johnson, Knaver, and Crafton for designating Plaintiff a "weapons violator" and imposing additional disciplinary sanctions (beyond those recommended by the Adjustment Committee) on him without a hearing.

**Count 7:** Eighth Amendment failure to protect claim against Defendants Brookman, Forsting, Rees, Atchinson, Knauer, and Payne for refusing to intervene to protect Plaintiff from his cellmate from October 2012 until January 2013.

Plaintiff has attempted to add on additional Defendants under separate claims of supervisory liability (*see* Claim 12 and 13 of Plaintiff's complaint). However, there is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A civil rights action against state officials under 42 U.S.C. § 1983 is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-

*Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Plaintiff may not proceed on a theory of supervisory liability; thus, any Defendants who were not named specifically under the above counts have not been included.

In addition, given the unwieldy nature of this complaint as it presently stands, the Court has not included as defendants John or Jane Does, unless identifying information, such as a badge number, was included. Plaintiff may, of course, seek to amend his complaint to add any of these individuals, so long as he clearly alleges their personal involvement in the alleged constitutional deprivation.

**Claims Subject to Dismissal**

> **Count 8:** Conspiracy claim against Defendants McClure, Lyerla, Moore, Cowan, Foster, Bebout, Baker, John Doe Badge # 3835, Hughs, Johnson, Atchinson, Oakley, and Godinez for conspiring to punish Plaintiff for filing lawsuits against correctional officers.

Plaintiff contends that the Defendants named in Count 8 "knowingly, maliciously, and sadistically condone[d] Plaintiff's guilty verdict" on his first disciplinary ticket and that this is evidence of a "pattern of conduct" that Defendants are engaged in a civil conspiracy to deprive Plaintiff of "adequate basic human necessities" and to wrongfully confine him in segregation as a way to retaliate against him for filing lawsuits.

Conspiracy is not an independent basis of liability in § 1983 actions. *See Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir.2000). "[T]o establish § 1983 liability through a conspiracy theory, 'a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.'" *Lewis*

*v. Mills,* 677 F.3d 324, 333 (7th Cir.2012) (quoting *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir.2007)).

The Seventh Circuit has explained that the "principal element" of a civil conspiracy is "*an agreement between the parties* to inflict a wrong against or injury upon another, and an overt act that results in damage." *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *rev'd in part,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)).

In the present case, Plaintiff does not allege that the named Defendants acted pursuant to *any* agreement. Plaintiff's vague allegation that Defendants were "engaged" in a civil conspiracy is not sufficient. *See Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir.2003) ("Although a conspiracy certainly may be established by circumstantial evidence, we have stressed that such evidence cannot be speculative.") As such, Plaintiff's conspiracy claim (Count 8) shall be dismissed without prejudice.

As an aside, it is worth noting that Plaintiff does not seek to hold any non-state officials liable. Presumably, Plaintiff has raised a conspiracy claim in an attempt to bring in state officials, like Defendant Godinez, who were not directly involved in the alleged constitutional violations. But a claim of conspiracy does nothing to expand the restrictions on which *state actors* may be held liable under § 1983. If there was in fact an agreement to violate an individual's constitutional rights (Plaintiff has not alleged there was such an agreement), and supervisory officials were parties to that agreement, then they could be held liable for the unconstitutional conduct, without bringing in a conspiracy claim. *See Backes v. Village of Peoria Heights, Ill.,* 662 F.3d 866, 870 (7th Cir.2011) (citing *Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir.2001)) (supervisors who "know about the conduct and facilitate it,

condone it, or turn a blind eye for fear of what they might see" may be held liable.)  Hence, Plaintiff gains nothing by raising a conspiracy claim, and, likewise, he loses nothing by its dismissal.

> **Count 9:** First Amendment retaliation claim against Defendants Allen, Forsting, Evielsizer, Easton, Miller, Reid, Snell, Kempfer, Lindenberg, Lyerla, Moore, Davis, Rees, and Whithopn for participating in and/or condoning the issuance of false disciplinary reports against Plaintiff on September 23 and September 24, 2012.

To state a retaliation claim, an inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  The plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).  The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice.  *Higgs*, 286 F.3d at 439.

Under Count 1, Plaintiff claimed that the named Defendants there had retaliated against him for filing lawsuits.  Here, Plaintiff never identifies any protected activity that could have been the reason for the alleged retaliatory disciplinary tickets issued in September 2012.  Instead, he claims that he was retaliated against for being identified as a "weapons violator."  Plaintiff offers nothing to support this allegation other than that the disciplinary ticket mentioned that Plaintiff's I.D. card identified him as a weapons violator.  And more importantly, being

identified as a "weapons violator" is not protected First Amendment activity. Even giving liberal construction to the complaint, s*ee Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009), Plaintiff's factual allegations are insufficient to state a retaliation claim related to the issuance of the second and third disciplinary tickets. Therefore, this claim (Count 9) shall also be dismissed without prejudice.

**Additional Miscellaneous Claims to be Dismissed**

Plaintiff is understandably upset that he spent three months in segregation and nearly ten months housed as a weapons violator (not to mention all of the privileges he lost while in segregation and while designated a weapons violator) for a disciplinary ticket that was later expunged from his record. Plaintiff seeks to hold liable two sets of prison officials: 1) prison officials who were made aware of his grievances related to the first disciplinary ticket and hearing, but failed to act quickly to expunge his record; and 2) prison officials who failed to adequately and promptly correct his status as a weapons violator once his disciplinary record was expunged.

As an aside, the Court wishes to clarify one point that seems to have caused some confusion. Plaintiff seems to suggest that he should not have been identified as a "weapons violator" after the Administrative Review Board's decision in June 2012 to reduce Plaintiff's sentence from six months to three. This reduction in Plaintiff's disciplinary sentence and the subsequent restoration of Plaintiff's good time credit did not erase Plaintiff's "weapons" conviction. Nor did Defendant Godinez's disapproval of the revocation of six months good time credit, noted in the September 28, 2012 memo sent by Defendant Crafton, erase Plaintiff's "weapons" conviction. (*See* Doc. 1, Ex. 22). Both of these actions *reduced* the sanctions imposed by the Adjustment Committee, but Plaintiff was still technically a "weapons violator"

14

until Defendant Godinez, Director of the Illinois Department of Corrections, authorized the expungement of Plaintiff's disciplinary record on January 15, 2013. Assuming, without deciding, that the Weapons Violator/Staff Assaulter policy was both a legitimate exercise of the Illinois Department of Corrections' authority and was imposed in compliance with due process standards (claims that Plaintiff may challenge under Count 6), Plaintiff's designation as a "weapons violator" was proper until January 15, 2013.

The fact that it took so long to reverse the Adjustment Committee's conviction, while exceedingly frustrating, does not amount to a constitutional violation in and of itself. Plaintiff may pursue his claims regarding the conditions he endured while housed in the segregation unit and the weapons violator unit, as well as his claims against prison officials he believes retaliated against him in the first place, and denied him due process at his disciplinary hearing. But Plaintiff has not stated a cognizable constitutional claim regarding the time it took to expunge his record. In fact, prison officials' decision to reduce Plaintiff's time in segregation from six months to three months in June 2012, and the eventual decision to expunge the April 2012 disciplinary ticket, indicates that Plaintiff received the post-disciplinary hearing due process that he demanded, albeit not as quickly as he would have liked.

It is extremely unfortunate that it took prison officials an additional four months to fully restore Plaintiff's privileges after Director Godinez ordered the expungement, but the failure of state officials to abide by State or Department regulations does not amount to a deprivation under the Constitution. The violation of a prison rule, by itself, does not give rise to a constitutional claim. *See Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations). For these reasons, Plaintiff's claims (**COUNT 10**) related to the

expungement of his April 2012 disciplinary ticket shall also be dismissed without prejudice. Likewise, for the same reasons stated above (in addition to the fact that Plaintiff has cited to a criminal law), Plaintiff may not proceed on a tort claim (**COUNT 11**) under the Illinois Official Misconduct law. *See* 720 ILCS 5/33-3.

### Pending Motions

**Motion to Appoint Counsel (Doc. 6)**

Plaintiff has filed a motion to appoint counsel (Doc. 6), in which he asks this Court to recruit counsel to represent him in this matter. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene,* 615 F.3d 847, 851 (7th Cir.2010); *Johnson v. Doughty,* 433 F.3d 1001, 1006 (7th Cir.2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866–67 (7th Cir.2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola,* 718 F.3d 692, 696 (7th Cir.2013) (citing *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir.2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar,* 718 F.3d at 696 (quoting *Pruitt,* 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt,* 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

In his motion, Plaintiff states that he has attempted, but failed, to recruit counsel on his own. Therefore, the Court must consider whether Plaintiff has demonstrated the capacity to litigate this particular matter on his own. Other than stating that he has a hand injury that makes it difficult to write, Plaintiff has offered no reason why he cannot adequately represent himself. His pleading is both coherent and well-drafted and the claims he raises (i.e., due process, retaliation, and conditions of confinement) are not particularly complex. Under the circumstances, the recruitment of counsel is not warranted at this time, and the motion (Doc. 6) is **DENIED** without prejudice to refiling as the case progresses.

**Motion to Instruct (Doc. 11)**

Plaintiff asks the Court to instruct him how to proceed in this matter. Generally, Plaintiff complains that his legal materials are being taken from him and he has limited access to the legal exchange, which inhibits his ability to litigate his civil actions. The Court cannot offer Plaintiff any legal advice, nor is the Court involved in the day-to-day operations of the institution where he is incarcerated. Plaintiff should take up complaints regarding his incarceration with the prison. To the extent that Plaintiff does not have immediate access to his legal materials or documents that are necessary to file or respond to a motion, Plaintiff may seek reasonable extensions of time. Plaintiff's Motion to Instruct (Doc. 11) is **DENIED**.

<u>**Disposition**</u>

**IT IS HEREBY ORDERED** that **COUNTS 8-11** are dismissed without prejudice for failure to state a claim upon which relief may be granted.

Defendants **EVIELSIZER, FOSTER, OAKLEY, JOHN DOE BADGE #6226,** and other unspecified **JOHN DOES** and **JANE DOES** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 1-7**, the Clerk of Court shall prepare for Defendants **MCCLURE, LYERLA, MOORE, COWAN, BAKER, KULICK, BEBOUT, HUGHES, DAVID JOHNSON, DAVIS, REID, MILLER, WHITEHOPN, MALLORY, LINDENBERG, KEMPFER, DILDAY, ALLEN, BROOKMAN, EASTON, TOURVILLE, SNELL, KORONDO, PAYNE, RANSOM, GODINEZ, ATCHINSON, HARRINGTON, SARAH JOHNSON, CRAFTON, FORSTING, REES, AND KNAUER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on **JOHN DOE BADGE #3835** until such time as Plaintiff has identified this individual by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file

or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 1, 2015**

s/ STACI M. YANDLE<br>
United States District Judge