**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

DAVID R. BENTZ, #S-03210,                          )
                                                   )
                 Plaintiff,              )
                                                   )
       vs.                                         )         Case No. 14-1132-SMY-PMF
                                                   )
MICHAEL ATCHISON, et al.,                          )
                                                   )
              Defendants.                )
                                                   )

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES**

      NOW COMES the Defendant, VICKI WOOD (identified as Defendant Payne in Plaintiff's Complaint), by and through her attorney Lisa Madigan, Attorney General for the State of Illinois, and answers Plaintiff's Complaint [Doc. 1], stating as follows:

**STATEMENT OF CLAIM**

      24.    This is a civil rights complaint filed by David Robert Bentz, pro-se, #S-03210, a State of Illinois prisoner, under 42 U.S.C. Section 1983. alleging a civil conspiracy in conjunction with United States Constitutional Rights violations under the First, Eighth, and Fourteenth Amendment.  Plaintiff also invokes the supplemental/pendent jurisdiction of this court.

      **RESPONSE: Defendant admits Plaintiff claims Defendants violated his rights. Defendant denies they actually violated his rights.**

      25.    The Plaintiff, Bentz, is a long term general population prisoner currently being housed at Menard Correctional Center, a maximum security facility.

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny whether Plaintiff is a "long term" prisoner.  Defendant admits that Plaintiff is sometimes, but not exclusively, housed in the general population.**

26.    The gravamen of this multi-claim complaint is that Bentz has been conspicuously denied rights and privelages [sic], subjected to cruel and unusual punishment (and other such constitutional deprivations) due to Defendants Christopher McClure, Lyerla, Moore, Robert Hughs [sic], and David Johnson condoning and/or conspiring to give Plaintiff bogus charges and/or ticket and infractions violating Plaintiff's due process and other constitutional rights.

**RESPONSE:  Defendant admits Plaintiff claims that Defendants violated his rights in the above described manner.  Defendant denies they actually violated Plaintiff's rights.**

27.    On April 09, 2012, Plaintiff Bentz received a disciplinary ticket from Defendant Christopher McClure during a shakedown by Defendants, McClure and B. Kulick [sic] for disciplinary infraction #104-dangerou contraband, where Defendant McClure stated as follows: "On the above date and approx. time this reporting officer (R/O) was doing a routine shakedown of cell #5-17 of the East cell house.  This R/O was shaking down a personal property box belonging to inmate Funtes #M-08880 personal property box #058508, upon looking inside a Reeves soft pastels box this R/O found a piece of metal approx. 5 inches long, this R/O then notified proper chain of command and inmate was I.D.'d [sic] by O.T.S. and I.D. Card."  This insident [sic] was witnessed and condoned by Defendant B. Kulick [sic].  (See:  Exhibit #2)

**RESPONSE: Defendant denies Plaintiff accurately quoted the April 9, 2012 disciplinary report.  Defendant admits the remainder of paragraph 27.**

28.    After the shakedown and before receiving Plaintiff's disciplinary report Plaintiff was told by Defendants Baker, and John Doe Badge #3835 that Plaintiff was being issued a

bogus disciplinary ticket because Plaintiff has filed lawsuits against other correctional officers. Plaintiff was also told by Defendants that, if Plaintiff filed another law suit that they would beat Plaintiff, where Defendants kept threatening to take Plaintiff into the shower and beat Plaintiff. (Ex #8)

**RESPONSE:  Defendant denies paragraph 28.**

29.    Plaintiff was then taken down stairs to the bull pen where Plaintiff was told by Defendants Bebout, Baker, and John Doe Badge #3835, "That's what you get for fileing [sic] law suits, segregation." (Ex #8)

**RESPONSE:  Defendant denies paragraph 29.**

30.    Plaintiff and his cell mate were asked by Defendant Moore, "Who's the one that had the Reeves pastels with the five (5) inch piece of wire in their property box," where Plaintiff's cell mate told Defendant Moore that it was his personal property and his contraband that Plaintiff knew nothing about the contraband.

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny whether the quotation in paragraph 30 is accurate.  Defendant denies the remainder of paragraph 30.**

31.    Plaintiff and his cellmate were taken to segregation, where Plaintiff received no pillow and a soiled cloth matress [sic] with no bed linens such as sheets or blanket to lay on, and other conditions as later mentioned in this complaint.

**RESPONSE: Defendant admits Plaintiff was taken to segregation.   Defendant denies the remainder of paragraph 31.**

32.    Plaintiff received a displinary [sic] report/ticket for 104-dangerous contraband on April 09, 2012.  (Ex #2)

3

**RESPONSE: Defendant admits paragraph 32.**

33.    The Illinois Department of Corrections Administrative Directive 504.20(e) states as followed:

**Section 504.20 Offenses and Maximum Penalties, Sub. Paragraph (e);**

"Offenders are presumed to be responsible for any contraband or other property prohibited by this part that is located on their person, within their cell or within areas of their housing, work, education, or vocational assignment that are under their controle[sic].  Areas under an offenders control include, but are not limited to, the door track, window ledge, ventilation unit, plumbing and the offender's desk, cabinet, shelving, storage area, bed, and bedding materials in his or her housing assignment; and desk, cubicle, work station, and locker in his or her work, educational, or vocational assignment.  If the offender produces evidence that convinces the adjustment committee or program unit that he or she did not commit the offense, the offender shall be found not guilty."

**RESPONSE:  Defendant admits paragraph 33.**

34.    Plaintiff was taken to see internal affairs officer, Defendant R. Cowan after Plaintiff had received his disciplinary report/ticket and placed in segregation under conditions later mentioned in this complaint. (Ex #2)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 34.**

35.    On April 12, 2012, Plaintiff was taken to see the adjustment committee to hear his ticket.  Such events of this hearing are later described in this complaint.  Plaintiff was found

guilty and received six (6) months of the following, C-grade, loss of good time, commissary restriction, and segregation (ex #2, 4, 5, 6)

**RESPONSE: Defendant admits paragraph 35.**

36.    Plaintiff was continued to be confined with punitive segregation under unconstitutional conditions of confinement as later described in this complaint.

**RESPONSE:   Defendant admits Plaintiff was housed in segregation.   Defendant denies the remainder of paragraph 36.**

37.    After Plaintiff was released from segregation Defendant, Michael Atchinson [sic] (warden) imposed further disciplinary sanctions to further punish offenders similarly situated to include Plaintiff, Bentz, Beyond the sanctions of the adjustment committee's sanctions for plaintiff's disciplinary ticket of 104-dangeorous contraband as later described in this complaint. (See:  Exhibit 17) Ex #26))

**RESPONSE: Defendant denies paragraph 37.**

38.    Defendant Warden, Michael Atchinson [sic] does not have the power or authority to increase Plaintiff's disciplinary sanctions recommended by the adjustment committee in Plaintiff's aforementioned disciplinary ticket of 104-dangerous contraband.   The Illinois Administrative Directive Code 504.80 Sub. Paragraph (P) 2, States in clear and plain language as followed: (ex #26)

**RESPONSE:**

**504.80(p)2**;    "The director, deputy director, or the chief administrative officer

shall not increase the sanctions recommended by the Adjustment Committee, but

her or she may reduce them.   The offender shall be sent a copy of any

modification to the Adjustment Committee recommendations."

**RESPONSE: Defendant admits paragraph 38.**

39.     Plaintiff's disciplinary ticket was expunged from Plaintiff's record on January 15, 2013, where Plaintiff continued to be disciplined regardless of his disciplinary ticket being expunged until May 07, 2013, almost three (3) months later, as described later in this complaint. (Ex #35)

**RESPONSE:   Defendant admits Plaintiff's disciplinary ticket was expunged. Defendant denies the remainder of paragraph 39.**

40.     The Eighth Amendment, which forbid "cruel and unusual punishment," governs the treatment of convicted prisoners.  Deliberate indifference to the unconstitutional conditions of confinement.  Constitutes cruel and unusual punishment, the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

**RESPONSE:  Defendant admits paragraph 37, but deny that Plaintiff has provided a complete summation of all applicable 8th Amendment authority.**

41.     The Fourteenth Amendment due process clause protects prisoners from the right to be heard and other rights in a prisoner disciplinary action.  (equal protection).

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 41.**

42.     There exist a pattern of conduct amongst certain Defendant's showing a civil conspiracy to deprive offenders, housed in Menard Correctional Center, to include Plaintiff Bentz, of access to reasonable adequate basic human necessities and/or wrongful confinement in punitive segregation and retaliations for filing law suits and the denial of access to a adequate grievance procedure.

**RESPONSE: Defendant denies paragraph 42.**

43.     Bentz will provide evidence at trial to substantiate his claim of civil conspiracy that, in fact, specific Defendants, have been deliberately indifferent to Bentz's basic human necessities, conditions of confinement, and conspired to wrongfully place Bentz in punitive segregation for filing law suits, and to further punish Plaintiff beyond the scope of their authority, and/or power.

**RESPONSE:  Defendant denies that they violated Plaintiff's rights.  Defendant lacks sufficient information or knowledge to admit or deny paragraph 43.**

44.     The persons named in this action absolutely do not have impunity when they infringe on the constitutional authority that penologically justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant denies that they violated Plaintiff's rights.**

**Claim #1**

45.     This claim regards the illegal retaliation and false disciplinary charges against Bentz for filing previouse [sic] law suits against other correctional officers, by the Menard Correctional Centers employees, Christopher McClure, Lyerla, Moore, R. Cowan, Foster, Bebout, Baker, B. Kulick [sic], and John Doe badge number #3835.  (Ex #2, 5, 6)

**RESPONSE:  Defendant denies that they retaliated against Plaintiff.  Defendant admits the remainder of paragraph 45.**

46.     The Plaintiff alleges that on April 09, 2012, that he informed Defendant Bebout that Plaintiff had a court deadline in one of Plaintiff's known litigation matters where Plaintiff requested Bebout if he could get Plaintiff access to the law library with no success in doing so. Bebout informed Plaintiff, "I don't care about your deadlines." and that Bebout would not do anything about Plaintiff's legal deadlines because Plaintiff "sues correctional officers."

**RESPONSE:   Defendant admits that Plaintiff alleges what is described in paragraph 46.  Defendant denies that they retaliated against Plaintiff or that they refused to allow Plaintiff access to the law library because he sues correctional officers.**

47.     Plaintiff never received access to the law library upon requesting of his known court deadlines of Defendants Bebout and/or Foster on April 09, 2012.

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 47.**

48.     A few hours after talking to Bebout Plaintiff was shook down (cell searched) by Defendants Christopher McClure and B. Kulick [sic] later that same day of April 09, 2012, where Plaintiff and his cellmate were taken to the shower, upon returning from the shower after the shakedown Plaintiff and his cellmate were pulled off to the side outside of the shower by Defendants Baker and John Doe badge number 3835. (Ex #8)

**RESPONSE: Defendant admits Defendant McClure shook Plaintiff's cell down on April 9, 2012.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 48.**

49.     Defendants Baker, and John Doe number 3835 when outside of the shower room for half an hour both Defendants threatened and spit on Plaintiff telling Plaintiff that if he did not drop his law suits and if he filed anymore that both Defendants would beat Plaintiff to death. Defendants continued to threaten and spit on Plaintiff while Plaintiff was hand cuffed stating, "So you like to sue officers maybe I should beat your ass now!"  This is just one of several statements made by both Defendants.  (Ex #8)

**RESPONSE: Defendant denies paragraph 49.**

50. Plaintiff and his cell mate were then taken down stairs to the cell house bull pen where Plaintiff was told by Defendants Bebout, Baker, and John Doe badge number 3835, "Thats what you get for filing lawsuits, segregation." (Ex #8)

**RESPONSE: Defendant denies paragraph 50.**

51. Plaintiff and his cell mate were in the bull pen when asked by Defendant Moore, "Who's the one that had the Reeves pastels with the five (5) inch piece of wire in their personal property box," where Plaintiff's cell mate told Defendant Moore that it was his personal property and his contraband and that Bentz knew nothing about the contraband.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny whether the quotation in paragraph 51 is accurate. Defendant denies the remainder of paragraph 51.**

52. Plaintiff was taken to segregation where later that same day of April 09, 2012, Plaintiff received a disciplinary ticket for 104-dangerous contraband from Defendants Christopher McClure and B. Kulick [sic], condoned by Defendants Lyerla and Moore. (Ex #2)

**RESPONSE: Defendant admits McClure wrote a disciplinary ticket listing Kulick as a witness, and the document was reviewed by Lyerla and Moore.**

53. On April 10, 2012, or there about Plaintiff was taken to see Defendant, Internal Affairs Officer, R. Cowan about Plaintiff's disciplinary Ticket 104-dangerous contraband, where Plaintiff informed Cowan that he knew nothing of the contraband, furthermore that the contraband was not found in Bentz's personal property box and that it was not in Bentz's posession [sic] or under Bentz's control according to Administrative Rule Directive 504.20(e). (See: Paragraph #33 of this complaint) where Defendant R. Cowan told Plaintiff that he should not file law suits and things like this would not happen, condoning Plaintiff's disciplinary ticket.

**RESPONSE:  Defendant denies that Defendant Cowan told Plaintiff that he was disciplined because he files law suits.  Defendant denies that the weapon was not within Plaintiff's control.  Defendant lacks sufficient information or knowledge to admit or deny whether Defendant Cowan interviewed Plaintiff on April 10, 2012.**

### Claim #2

54.     This claim regards the denial of due process and/or wrongful confinement and convicting in punitive segregation in Plaintiff's disciplinary hearing conducted in bad faith by Defendants Robert Hughs [sic] and David Johnson.

**RESPONSE:   Defendant admits Plaintiff claims that his rights were violated. Defendant denies that they actually violated his rights.**

55.     The Plaintiff received a disciplinary ticket on April 09, 2012, for 104-dangerous contraband as described in aforementioned claim #1 of this complaint.  (Ex #2)

**RESPONSE: Defendant admits paragraph 55.**

56.     On April 12, 2012, a hearing was conducted by Defendants Robert Hughs [sic] and David Johnson of (Ticket 201200884/1-men).  During this hearing Plaintiff tried to hand Defendants his exhibits, three (3) in all which the Defendants refused to take and/or look at, and simply ask Plaintiff how he pleaded, Plaintiff pleaded not guilty, Defendants then continually asked Plaintiff if he was plugged (gang affiliated) Plaintiff said, "No".  Defendants told Plaintiff, "You are free to go."  Where Plaintiff tried to hand Defendants his exhibit and was told, "I don't need this shit!" refusing to look at Plaintiff's exhibits and refusing to allow Plaintiff to make any kind of statement violating Plaintiff's due process right to be hear [sic] in a disciplinary hearing.

**RESPONSE: Defendant denies that any members of the April 12, 2012 adjustment committee refused to view and consider any evidence Plaintiff brought to his hearing.**

**Defendant denies that said committee members stated "I don't need this shit!"  Defendant denies that Plaintiff was prevented from making any kind of statement at his April 12, 2012 disciplinary hearing.  Defendant denies that they violated Plaintiff's due process rights. Defendant lack sufficient information or knowledge to admit or deny what Plaintiff orally stated at his April 12, 2012 disciplinary hearing.  Defendant admits that a disciplinary hearing was held on April 12, 2012.**

57.    Defendant's Robert Hughs [sic], and David Johnson found Plaintiff Bentz guilty of disciplinary ticket, 104-dangerous contraband, where Defendant's summary report for finding Bentz guilty read as followed:  (Ex #4)

> "Based on R/O was conducting a routine shakedown of cell east 5-17 occupied by inmate Bentz #S-03210 and inmate Fuentes #M-08880.  R/O found in inmate Bentz property box in a soft pastel box one piece of metal approx. five inches long, doc 0300 indicates property was confiscated I.D. by I.D. Card OTS."

**RESPONSE:  Defendant admits paragraph 57.**

58.    The findings of Defendant's, Robert Hughs [sic], and David Johnson, within above paragraph number 57 of this complaint is in fact contradictory of Bentz's disciplinary ticket of Defendant's, Christopher McClure and B. Kulick [sic], see above paragraph number 27 of this complaint.  (Ex #2, #4)

**RESPONSE:  Defendant admits that the April 9, 2012 disciplinary ticket states that the weapon was found in Fuentes' property box while the April 12, 2012 adjustment committee summary states that the weapon was found in Bentz's property box.**

59.    Defendant's, Robert Hughs [sic] and David Johnson knowingly maliciously, and sadisticllly [sic] found Plaintiff guilty of a bogus/false disciplinary ticket with the sole intent to

punish Plaintiff for unjustifiable penological reasons in conspiracy and/or retaliation for filing law suits against correctional officers.

**RESPONSE:  Defendant denies paragraph 59.**

**Claim #3**

60.     This claim regards the civil conspiracy in retaliation to Plaintiff for filing previous law suits against other correctional officers by conspiring to punish Bentz by placing Bentz in punitive segregation by the means of a bogus and/or false disciplinary ticket and/or disciplinary ruling and hearing and/or by condoning such actions by Defendant's, Christopher McClure, Lyerla, Moore, R. Cowan, Foster, Bebout, Baker, B. Kulick [sic], John Doe Badge #3835, Robert Hughs [sic], and David Johnson, Michael Atchinson [sic], Lori Oakley, Salvidor [sic] Godinez, and other.

**RESPONSE:  Defendant admits Plaintiff claims they violated his rights.  Defendant denies they actually violated his rights.**

61.     The Plaintiff alleges that on April 09, 2012, that he informed Defendant Bebout that Plaintiff had a court deadline in one of Plaintiff's known litigation matters, where Plaintiff requested of Bebout if he would get Plaintiff access to the law library so that Plaintiff could meet his deadlines because Plaintiff had been trying to gain access to the law library with no such sucess [sic] in doing so.  Bebout informed Plaintiff, "I don't care about your deadlines because Plaintiff sues correctional officers."

**RESPONSE:  Defendant denies that Defendant Bebout stated "I don't care about your deadlines because Plaintiff sues correctional officers."  Defendant denies that Plaintiff is denied access to the law library.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 61.**

62.    A few hours after talking to Bebout Plaintiff was shook down (cell searched) by Defendant's Christopher McClure and B. Kulick [sic] later that same day of April 09, 2012, where Plaintiff and his cell mate were taken to the shower area.  Upon returning from the shower area after the shakedown Plaintiff and his cell mate were pulled off ot the side outside of the shower area by Defendant's Baker and John Doe badge number 3835. (Ex #8).

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 62.**

63.    Defendant's Baker, and John Doe Badge Number 3835 when outside of the shower room for half an hour both Defendant's threatened and spit on Plaintiff telling Plaintiff that if he did not drop his law suits and if he filed anymore that both Defendant's would beat Plaintiff to death.  Defendant's continued to threaten and spit on Plaintiff while Plaintiff was hand cuffed statting [sic].  "So you like to sue officers and may be I should beat your ass now!" This is just one of several statements made by both Defendant's.  (Ex #8)

**RESPONSE:  Defendant denies paragraph 63.**

64.    Plaintiff and his cell mate were then taken down stairs to the cell house bull pen where Plaintiff was told by Defendant's Bebout, Baker, and John Doe badge number 3835, "That's what you get for filing law suits, segregation."

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny whether Plaintiff was taken to the bull pen after taking a shower.  Defendant denies the remainder of paragraph 64.**

65.    Plaintiff and his cell mate were in the bull pen when asked by Defendant Moore, "Who's the one that had the Reeves pastels with the five (5) inch piece of wire in their personal

property box," where Plaintiff's cell mate told Defendant Moore that it was his personal property and his contraband and that Bentz knew nothing about the contraband.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny whether the quotation in paragraph 65 is accurate.  Defendant denies the remainder of paragraph 30.**

66.     Plaintiff was taken to segregation where later that same day of April 09, 2012, Plaintiff received a disciplinary ticket for 104-dangerous contraband from Defendant's Christopher McClure and B. Kulick [sic], condoned by Defendant's Lyerla and Moore.  (Ex #2)

**RESPONSE:  Defendant admit McClure wrote a disciplinary ticket listing Kulick as a witness, and the document was reviewed by Lyerla and Moore.**

67.     On April 10, 2012, or there about Plaintiff was taken to see Defendant, Internal Affairs Officer, Defendant R. Cowan about Plaintiff's disciplinary ticket of 104-dangerous contraband, where Plaintiff informed Cowan that he knew nothing of the contraband. Furthermore, that the contraband was not found in Bentz's personal property box and that it was not in Bentz's posession [sic] or under Bentz's control according to the Administrative Rule Directive 504.20(e) (see aforementioned paragraph number 33 of this complaint(.   Where Defendant, R. Cowan told Plaintiff that he should not file law suits and things like this would not happen, condoning Plaintiff's displinary [sic] ticket.  (Ex #2)

**RESPONSE: Defendant denies that Defendant Cowan told Plaintiff that he was disciplined because he files law suits.  Defendant denies that the weapon was not within Plaintiff's control.  Defendant lacks sufficient information or knowledge to admit or deny whether Defendant Cowan interviewed Plaintiff on April 10, 2012.  Defendant admits Plaintiff was interviewed on April 10, 2012.**

68.     On April 12, 2012, a hearing was conducted by Defendant's Robert Hughs [sic] and David Jonson [sic] (Ticket #201200884/1-men).  During this hearing Plaintiff tried to hand Defendant's his exhibits, three (3) in all which the Defendant's refused to take and/or look at, and simply asked Plaintiff how he pleaded.  Plaintiff pleaded not guilty.  Defendant's then continually asked Plaintiff if he was plugged (gang affiliated) Plaintiff said "No".  Defendant's then told Plaintiff, "You are free to go" where Plaintiff tryed [sic] to hand Defendant's his exhibits and was told, "I don't need this shit!" refusing to look at Plaintiff's exhibits and refusing to allow Plaintiff to make any kind of statement violating Plaintiff's due process right to be heard in a disciplinary hearing.  (Ex #4, 45) (Ex #5, 6, 10)

**RESPONSE: Defendant denies that any members of the April 12, 2012 adjustment committee refused to view and consider any evidence Plaintiff brought to his hearing. Defendant denies that said committee members stated "I don't need this shit!"  Defendant denies that Plaintiff was prevented from making any kind of statement at his April 12, 2012 disciplinary hearing.  Defendant denies that they violated Plaintiff's due process rights. Defendant lack sufficient information or knowledge to admit or deny what Plaintiff orally stated at his April 12, 2012 disciplinary hearing.  Defendant admits that Plaintiff attended a April 12, 2012 disciplinary hearing conducted by Defendants Hughes and Johnson.**

69.     Defendant's Robert Hughs [sic], and David Johnson found Plaintiff, Bentz guilty of the disciplinary ticket 104-dangerous contraband, where Defendant's summary report for finding Bentz guilty read as followed:  (Ex #4)

"Based on, R/O was conducting a routine shakedown of cell East 5-17 occupied

by inmate Bentz S-03210 and inmate Funetes M-08880,  R/O found in inmate

Bentz property box in a soft pastel box one piece of metal approx.. five inches long, Doc 0300 indicates property was confiscated I.D. by I.D. Card OTS."

**RESPONSE: Defendant admits paragraph 69.**

70.    The findings of Defendant's Robert Hughs [sic], and David Johnson within above paragraph number (69) of this complaint is in fact contradictory of Bentz's disciplinary ticket of Defendant's Christopher McClure and B. Kulick [sic], to see above paragraph number (27) of this complaint.   With the soul intention to punish Plaintiff for filing law suits, for no penologically [sic] justifiable reason.  (Ex #2, 4)

**RESPONSE: Defendant admits that the April 9, 2012 disciplinary ticket states that the weapon was found in Fuentes' property box while the April 12, 2012 adjustment committee summary states that the weapon was found in Bentz's property box.**

71.    Defendant's Robert Hughs [sic] and David Johnson did knowingly, maliciously and sadisticlly [sic] find Plaintiff guilty of a bogus/false, disciplinary ticket, with the sole intent to punish Plaintiff for unjustifiable, penological reasons, and for filing law suits against correctional officers.  (Ex #2, 4)

**RESPONSE: Defendant denies paragraph 71.**

72.    Defendants Atchinson [sic], Oakley, Godinez, and other did knowingly, maliciously and sudisticlly [sic] condone Plaintiff's guilty verdict of above bogus/false disciplinary ticket in bad faith when the findings of the committee's ruling for guilt is the countradictory [sic] stating the very opposite of Plaintiff's ticket, and when Plaintiff's ticket and finding of guilt are in fact not in violation of any rules and/or regulations.  (Ex #2, 4, 5, 6, 10, 11, 12, 23)

**RESPONSE:  Defendant denies paragraph 72.**

73.    There exist a pattern of conduct amongst certain Defendant's showing a civil conspiracy to deprive offenders, housed in Menard Correctional Center, to include Plaintiff Bentz, of access to reasonable adequate basic human necessities and/or wrongful confinement in punitive segregation and retaliation for filing law suits and the denial of access to a adequate grievance procedure for reasons no penologicaly [sic] justified.

**RESPONSE: Defendant denies paragraph 73.**

74.    Bentz will provide evidence at trial to substantiate his civil conspiracy cliam that in fact, specific Defendants, have been deliberately indifferent to Bentz's basic human necessities, conditions of confinement, and conspired to wrongfully place Bentz in punitive segregation for filing law suits, and to further punish plaintiff beyond the scope of their authority, and/or power as later described within this complaint.

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny what future actions Plaintiff will take.  Defendant denies that they violated Plaintiff's rights.**

75.    The persons named in this action absolutely do not have impunity when they infringe the constitutional authority that penologically justifies sound decision making in the daily operations of prison.

**RESPONSE:  Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### Claim #4

76.    This claim regards the unconstitutional conditions of confinement while in punitive segregation, the denial of basic human necessities, lack of ventilation, and the excessive

heat exceeding the heat index of 90°, where conditions were brought to the attention and condoned by Defendants' R. Davis, J. Reid, J. Miller, Whitehopn [sic], Mallory, Lindenberg, and other's.  (Ex #43) (Ex #14)

**RESPONSE:   Defendant admits paragraph 76 contains allegations relating to a conditions of confinement claim.  Defendant denies that they violated Plaintiff's rights in any way.**

77.    On April 09, 2012, Plaintiff was placed within punitive segregation in retaliation for filing lawsuits against correctional officers, and for a false/bogus disciplinary report/ticket for 104-dangerous contraband as aforementioned within this complaint.  (Ex #2

**RESPONSE:  Defendant admits Plaintiff was placed in segregation on April 9, 2012. Defendant denies the remainder of paragraph 77.**

78.    On April 09, 2012, Plaintiff was placed within punitive segregation in cell house North two, cell #754 (N-2-754), where Plaintiff received a cloth soiled mattress, no pillow, no cleaning supplies at all, and a broken toilet that leaked its contents onto the cell floor, where Plaintiff raised this to the attention of Defendant's, Davis, Reid, Miller, Whitehopn [sic], Mallory, Lindenberg, and other, but Defendants refused to take any kind of action to remedy the issue/matter.

**RESPONSE: Defendant admits Plaintiff was placed in segregation in cell N2-754 on April 9, 2012.  Defendant denies the remainder of paragraph 78.**

79.    Plaintiff was not allowed any kind of cleaning supplies at all while confined within punitive segregation, cell N-2-754 to clean his cell walls, floor, toilet, and sink areas, where such areas had spit, urin [sic], food, and other unknown matter on the floor, wall's, sink, and toilet areas.  Plaintiff made several request to Defendant's Davis, Reid, Miller, Whitehopn

[sic], Mallory, Lindenberg, and other's for cleaning supplies for the aforementioned reasons and was denied of such by Defendants.

**RESPONSE: Defendant denies paragraph 79.**

80.     Plaintiff was later moved from segregation cell N-2-754 to segregation cell N-2-852 where Plaintiff was given a soiled cloth mattress, no pillow, and no cleaning supplies for the rest of Plaintiff's three (3) months of confinement within punitive segregation where Plaintiff made several request for cleaning supplies, and a pillow, and a unsoiled mattress to Defendant's Davis, Reid, Miller, Whitehopn [sic], Mallory, Lindenberg, and others, where Plaintiff was denied of such things by the aforementioned Defendants.

**RESPONSE: Defendant admits Plaintiff was moved to cell N2-852.  Defendant denies the remainder of paragraph 80.**

81.     During Plaintiff's confinement within punitive segregation Plaintiff had to endure the unbearable excessive heat over the heat index of 90° degrees with the equivalent of the measurements of half (1/2) a cup of water, one (1) time a day and/or the measurements of half (1/2) a cup of ice one (1) tme a day, where on most days Plaintiff received no cups of ice and/or water at all.  Plaintiff had no ventilation to combat the excessive heat, where Plaintiff made several request to Defendants Davis, Reid, Miller, Whitehopn [sic], Mallory, Lindenberg, and others, where said Defendants refused to do anything.

**RESPONSE:   Defendant admits the heat index sometimes exceeds 90 degrees Fahrenheit.  Defendant denies the remainder of paragraph 81.**

82.     During Plaintiff's confinement, within punitive segregation Plaintiff had to endure the extremely unbearable excessive heat between 100° degrees and 110° degrees plus for two weeks or more, with the aforementioned conditions within above paragraph number 81, and also

during this time no ventilation do to the gallery exhaust fans being turned off during this time of excessive heat.  There were days that no ice and/or water were passed out because no one/staff would come on the gallorie [sic] do [sic] to the extreme excessive heat.  It should be noted that during this time a inmate died due to extreem [sic] heat in the cell house.

**RESPONSE: Defendant admits that temperatures sometimes exceed 100 degrees Fahrenheit.  Defendant lacks sufficient information or knowledge to admit or deny whether an inmate died of extreme heat while Plaintiff was in segregation.  Defendant denies the remainder of paragraph 82.**

83.   Plaintiff was confined within punitive segregation cell N-2-852 with another offender, where the cell was designed as a one man cell and later remodeled it to a two man cell consisting of a approx. 30 square feet of free floor space for two (2) offenders.

**RESPONSE:  Defendant admits Plaintiff had a cellmate when housed in N2-852. Defendant denies that Plaintiff's cell was only fit to house one prisoner.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 83.**

84.   The federal courts have required a minimum of 60 square feet per inmate, furthermore under Illinois law 730ILCS 5/3-7-3 (b) section, institutional safty [sic] and sanitation, paragraph (b) states:  "all new, remodeled and newly designated institutions are facilities shall provide at least 50 square feet of cell, room, or dormitory floor space," Plaintiff's and cell mate's cell N-2-852 and other offenders cell's similarly situated within cell house N-2 do not meet these aforementioned requirements.

**RESPONSE: Defendant denies that the square footage of Plaintiff's cell violated statutory or common law.**

85.    Cell house N-2 is considered a condemned building, see: Lightfoot (u) Walker, where N-2 still does not meet fire code regulations and/or other Illinois law conditions as aforementioned within this claim.

**RESPONSE: Defendant denies that the N-2 cell house has been condemned. Defendant denies that the N-2 cell house does not comply with applicable law.**

86.    Plaintiff's cell was a very unsafe place to live do to the light switch and outlets being placed directly off the sink and toilet area allowing/forcing electrical cords, and electronic idems [sic] to fall into the sink and/or toilet area creating a possible death trap do to the cells in N-2 to include Plaintiff's cell N-2-582 do not contain the proper safety G.F.I. outlets.

**RESPONSE:  Defendant admits that some electrical outlets are placed near toilets or sinks.  Defendant lacks sufficient information or knowledge to admit or deny whether the cells are equipped with "G.F.I." outlets.  Defendant denies the remainder of paragraph 86.**

87.    Plaintiff has brought to the attention of Defendants the aforementioned conditions within paragraph's numbers 83, 84, 85, and 86, where Defendants, Lindenberg, Davis, Reid, Miller, Whitehopn [sic], Mallory, and other's refused to take any kind of measures to remedie [sic] the conditions of aforementioned.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 87.**

88.    The Defendants aforementioned absolutely do not have impunity when they infringe the constitutional authority that penologically justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### Claim #5

89.    This claim regards the excessive displinary [sic] sanctions not recomended [sic] by the Adjustment Committee, and/or after Plaintiff's disciplinary ticket was denied by the Prison Review Board and the revocation of Plaintiff's aforementioned displinary [sic] ticket of 104-dangerous contraband, was concurred by the Defendant Godinez and other's, and the excessive disciplinary infractions condoned and/or imposed upon Plaintiff by Defendant's Godinez, Atchinson [sic], Harrington, Sara Johnson, Knauer, Crafton, and others Does.  (Ex #35)

**RESPONSE: Defendant admits that Plaintiff alleges in paragraph 89 that Defendants violated his rights.  Defendant denies that they actually violated his rights.**

90.    On July 09, 2012, Plaintiff was moved from segregation cell N-2-852 to general population cell N-2-749, where Plaintiff was released from his three (3) months of punitive segregation.

**RESPONSE: Defendant admits paragraph 90.**

91.    On July 17, 2012, Plaintiff was moved from general population cell N-2-749 to general population in east house on ten (10) gallery.

**RESPONSE: Defendant admits paragraph 91.**

92.    On or about July 20, 2012, Plaintiff saw the Prison Review Board (P.R.B.), where the P.R.B. denied Plaintiff's disciplinary ticket and/or the revocation there of, which the Defendants Godinez and other concurred with (See:  Exhibit #35).

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 92.**

93.     Despite the P.R.B.'s and Defendant Godinez and other's revocation of Plaintiff's aforementioned disciplinary ticket for 104-dangerous contraband and the Menard Correctional Center warden, Defendant Atchinson [sic], and John/Jane Doe records officer, and the Adjustment Committee Defendant's (Does) being notified of Plaintiff's revocation, where Plaintiff received further disciplinary sanctions not imposed by the Adjustment Committee do to Plaintiff's aforementioned ticket for reasons not penologicaly [sic] justified and not within the scope of the aforementioned Defendant's to increase Plaintiff's disciplinary sanctions as described later within this complaint.  (Ex #35)  (Ex #17)

**RESPONSE:   Defendant denies that Plaintiff's punishment for dangerous contraband was increased.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 93.**

94.     On or about the end of July, 2012, or there about Plaintiff was moved from the East cell house to the West cell house, Cell #804 (W-804) and identified and marked as a weapons violator, where the West house eight (8) and seven (7) galleries are designated for weapons violators and/or staff assaulters, and further shall wear clothing with black stripes affixed to them, identifying them as weapons violators and staff assaulters, where the black striped clothing is to be worn as the outermost garment and shall be visible at all times when Plaintiff is out of his cell, and shall be prohibited from work assignments, and shall be subjected to cell searched weekly and shall be routinely patted down when entering and exiting areas and buildings on call passes and shall be issued an identification card with the letters "WV" for weapons violators on the front of the Plaintiff's I.D. card, and shall attend yard together and

separate from other offenders (the designated area is a (16) box yard), 16 box yard is a small segregation like yard confined in a small box like yard, and where all aforementioned after Plaintiff's disciplinary ticket for 104-dangerous contraband was issued to Plaintiff and after Plaintiff was sentenced by the Adjustment Committee, where the Adjustment Committee did not recommend the aforementioned disciplinary sanctions imposed upon the Plaintiff.  (Ex #17)

**RESPONSE: Defendant denies that obtaining a status of a weapons violator is discipline.  Defendant admits Plaintiff was moved to West cell house toward the end of July 2012 because he was a weapons violator and was required to wear black and white clothing and had restricted privileges through the facility.**

95.     The Defendant's Godinez, Atchinson [sic], Harrington, Sara Johnson, Knauer, Crafton, and other Doe's do not have the power and/or authority, and are prohibited from increasing disciplinary sanctions recommended by the Adjustment Committee, but Defendants may reduce the Plaintiff's disciplinary sanctions recommended by the Adjustment Committee. The Defendant's aforementioned are in clear violation of Plaintiff's due process rights when they knowingly, maliciously, sadistically, and intentionally impose further disciplinary sanctions on Plaintiff not recommended by Adjustment Committee and beyond the scope of their power and/or authority denying Plaintiff a proper hearing for Defendant's aforementioned disciplinary sanctions in clear violation of the due process clause to protect Plaintiff in a disciplinary hearing and/or to a hearing and other rights and safegards [sic] set in place to protect Plaintiff's rights. (Ex #26)

**RESPONSE:  Defendant denies that any Defendant imposed additional discipline beyond what the adjustment committee recommended.  Defendant denies that Plaintiff was proved with an improper hearing, and Defendant denies that Plaintiff's rights were**

violated in any way.  **Defendant admits that they do not have the authority to increase sanctions placed on an inmate by the adjustment committee.**

96.     On July 20, 2012, or there about, the Prison Review Board and Defendant Godinez's revocation of Plaintiff's disciplinary ticket, where Defendant Godinez sent notice to Defendants Atchinson [sic] and Defendant Doe's to expunge Plaintiff's disciplinary infraction and/or disciplinary ticket for 104-dangerous contraband causing Plaintiff to no longer be considered a weapons violator, but Defendant's Atchinson [sic] and other Doe's took no acitons as ordered by the Director of the Illinois Department of Corrections, Defendant Godinez, where Defendants continued to impose excessive disciplinary sanctions on Plaintiff and treat Plaintiff as a weapons violator beyond Defendants Atchinson [sic] and other Doe's power and/or authority to set forth to Defendants.  (Ex #17, 26)

**RESPONSE:  Defendant denies paragraph 96.**

97.     While Plaintiff was confined as a weapons violator Plaintiff had to endure the unconstitutional conditions of confinement as later described within this complaint and the conditions aforementioned.

**RESPONSE:  Defendant denies paragraph 97.**

98.     The Plaintiff was treated as a weapons violator as aforementioned within above paragraph (#94) from the end of July 2012 or there about until Plaintiff was moved from W-716 a weapons violator cell to general population cell W-1001 off of the weapons and staff assaulters galleries, where Plaintiff was still required to wear striped clothing as a weapons violator as above mentioned within paragraph (#94) until Plaintiff was eventually moved to the East house cell #704, where on May 08, 2013, Plaintiff receied [sic] general population clothing with no black stripes affixed to Plaintiff's clothing.  (Ex #17)

25

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 98.**

99.    The Eighth Amendment, which forbid "cruel and unusual punishment," governs the treatment of convicted prisoners, deliberate indifference to the unconstitutional conditions of confinement, constitutes cruel and unusal [sic] punishment, the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.

**RESPONSE: Defendant admits paragraph 37, but deny that Plaintiff has provided a complete summation of all applicable 8th Amendment authority.**

100.    The Fourteenth Amendment due process clause protects prisoners from the right to be heard and other rights in a prisoner disciplinary action.

**RESPONSE: Defendant admits that prisoners retain some 14th Amendment rights.**

101.    There exist a pattern of conduct amongst certain Defendant's showing a civil conspiracy to deprive offenders, housed in Menard Correctional Center, to include Plaintiff Bentz, of access to reasonable adequate basic human necessities and/or wrongful confinement in punitive segregation and retaliation for filing lawsuits and/or failure to cooperate with Defendants and the denial of access to a adequate grievance procedure, and due process.

**RESPONSE: Defendant denies paragraph 101.**

102.    Bentz will provide evidence at trial to substantiate his claim of civil conspiracy that in fact, specfici Defendants, have been deliberately indifferent to Bentz's basic human necessities, conditions of confinement, and conspired to wrongfully place Bentz in punitive segregation for filing law suits, and further punishing Plaintiff beyond the scope of there authority, and/or power.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny what future actions Plaintiff will take.   Defendant denies that they violated Plaintiff's rights.**

103.    The person's named in this action absolutely do not have impunity when they infringe the constitutional authority that penologically justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**


**Claim #6**

104.    This claim regards the unconstitutional conditions of confinement while Plaintiff was on weapons violator status due to the excessive displinary [sic] sanctions unjustifiably imposed on Plaintiff (see: Above claim #5) and as later described within this complaint, where the below unconstitutional conditions within this claim were brought to the attention and condoned by Defendant's Dilday, Rees, Brookman, Allen, Forsting (#3710), Korondo, Ransom, Snell (#3947), Easton, Bebout (#4959), Payne, Tourville, and other's.  (Ex #17, 35)

**RESPONSE: Defendant admits that Plaintiff alleges in paragraph 104 that Defendants violated Plaintiff's rights.   Defendant denies that they actually violated Plaintiff's rights.**

105.    On July 17, 2012, Plaintiff was moved to East house on ten (10) gallery although ten (10) galleries [sic] is general population and not a weapons violator gallory [sic], Plaintiff was still treated as a weapons violator being housed within West house on eight (8) and/or seven

(7) galleries [sic] as described within paragraph #94 of this complaint, where Plaintiff one week or there about was moved to West house, cell #804 (W-804) on a weapon violators gallery, where Plaintiff suffered the unconstitutional conditions as later described within this claim.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny whether any individual, prisoner or staff member, continued to treat Plaintiff as a weapons violator even after Plaintiff was no longer required to wear black and white stripes out of an abundance of caution.  Defendants that on or about July 17, 2012, Plaintiff was moved to the East Cell House.**

106.    During Plaintiff's confinement within the East and West house as aforementioned Plaintiff was denied of adequate cleaning supplies to clean Plaintiff's floor, walls, sink, and toilet areas.  Plaintiff made several request in person for such idems [sic] to Defendants Dilday, Reese, Brookman, Allen, Tourville, Forsting (#3710), Korondo, Ransom, Snell (#3947), Easton, Bebout (#4959), Payne and other Doe's, where the aforementioned Defendants refused to provide Plaintiff with any kind of adequate cleaning supplies.

**RESPONSE:  Defendant denies paragraph 106.**

107.    Plaintiff's was marked and identified as a weapons violator in such a way (as aforementioned within this complaint) that marred Plaintiff as a target for retaliation creating a security risk/threat to Plaintiff, where Plaintiff was unjustifiably identified and marked for no penological reason, where said retaliation did occure [sic] as later described within this complaint.  (Ex #17)

**RESPONSE: Defendant denies paragraph 107.**

108.    Plaintiff's cell was a very unsafe place to live do to the outlets being placed above the sink and toilet area allowing electronic items and electrical cords to fall into the sink and

toilet areas creating a possible death trap for offenders to include Plaintiff due to the fact that the outlets are not the proper safety "G.F.I." outlets.

**RESPONSE: Defendant admits that some electrical outlets are placed near toilets or sinks. Defendant lacks sufficient information or knowledge to admit or deny whether the cells are equipped with "G.F.I." outlets. Defendant denies the remainder of paragraph 86.**

109.    Plaintiff was housed within the East and/or west cellhouse as aforementioned within paragraph #105 of this claim from July 17, 2013 throughout May 07, 2013.   See aforementioned "statement of claims" within this complaint.

**RESPONSE:  Defendant admits paragraph 109.**

110.    Defendants Dilday, Reese, Brookman, Allen, Forsting (#3710), Korondo, Ransom, Snell (#3947), Easton, Bebout (#4959), Payne, and other Doe's were personally informed and/or notified by Plaintiff of Plaintiff's aforementioned conditions of confinement as mentioned within this claim.  Defendants aforementioned knowingly, maliciously, and sadisticlly [sic] denied Plaintiff of adequate cleaning supplys [sic] and other conditions as aforementioned and condoned such conditions by doing nothing to attempt to remedy said conditions.

**RESPONSE: Defendant denies paragraph 110.**

111.    The persons named in this action absolutely do not have impunity when they infringe the constitutional authority that penologically justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

**Claim #7**

29

112.    This claim regards the illegal retaliation and false disciplinary charges against Plaintiff for being a known alledged [sic] and/or marked weapons violator by Defendant's Justin Snell, Allen, Evielsizer, Reese, Chad Forstine, and Moore.   Furthermore the unconstitutional conditions of confinement as a result of said false disciplinary tickets by Defendants R. Davis, J. Reid, J. Miller, Kempfer (#8459), Mallory, Whitehopn [sic], Lindenberg, Dilday, and other Doe's.

**RESPONSE: Defendant admits that Plaintiff alleges in paragraph 104 that Defendants violated Plaintiff's rights.   Defendant denies that they actually violated Plaintiff's rights.**

113.    On September 16, 2012, Plaintiff was cell searched by Defendant Justin Snell (#3949), where Snell took a brown Pontiac Correctional Center commissary sheet and replace it with a white state sheet.  (Ex #16)

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 113.**

114.    On September 23, 2012, Plaintiff was cell searched a second time, by Defendant's Justin Snell and Allen, where Plaintiff received a bogus/false disciplinary ticket by Defendant's because Plaintiff is/was an alledged [sic] and/or marked as a weapons violator.   Plaintiff's disciplinary ticket was for; 104-dangerous contraband, 202-dangerous or misuse of property, 205-security threat group where the ticket stated as follow: (#18)

Observation:  "On the above date and approx. time this R/O was shaking down cell 8-04 in West house.  During this shake down this R/O observed 1-West bend fan with the name Robertson #R63300 etched in the fan.  The fan appeared to have been alter and pryed [sic] open with the fan shaft push threw the back of the

fan, 1-lamp, 2-correctable film ribbons, 1-extension cord, 1-gang letter, all items were taken out of cell and a shakedown slip filled out. Offender Bentz #S-03210 is assigned to cell 8-04 and I/D by I/D card/Bentz is a known weapons violter see Doc 434 for more info. Witnesses, Allen #11352." (Ex #18).

**RESPONSE: Defendant denies that Plaintiff accurately quoted Plaintiff's Exhibit 18. Defendant admits Plaintiff's cell was searched on September 23, 2012 and that he received a disciplinary ticket for possessing a dangerous weapon, dangerous misuse of property, and security threat group activity. Defendant denies that the disciplinary ticket was false or bogus. Defendant lack sufficient information or knowledge to admit or deny whether Plaintiff cell was searched a second time on September 23, 2012.**

115. The aforementioned disciplinary ticket was condoned by the shift supervisor Defendant Reese and concurred by the shift reviewing officer, Defendant D. Evielsizer (#12860), where Plaintiff and his cell mate were escorted to segregation the following day of September 24, 2013. (Ex #18)

**RESPONSE: Defendant admits that the above disciplinary ticket was reviewed by Evielsizer and Defendant Reese.**

116. On September 24, 2012, Plaintiff received another false disciplinary ticket after Plaintiff and his cell mate were escorted to segregation as aforementioned in this claim, where Defendant Chad Forsting issued Plaintiff a false disciplinary ticket for 206-intimidations of threats; 304-insolence where said ticket states, as followed: (Ex #20)

Observation: "On the above date and approx. time while this Sgt. was in the Sgt. cage inmate Bentz (S03210) walked by escort by C/O [illegible]. Inmate Bentz

31

was being escorted to segregation for having dangerous contraband in his cell. While passing the Sgt. cage inmate Bentz looked at this Sgt. saying "you just did yourself I'll see you in court!" Inmate Bentz was escorted out of the West house and into segregation with no further incident. Positive ID by by [sic] sight and OTS." Witnessed by C/O [illegible].

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny whether Plaintiff properly quoted the September 24, 2012 disciplinary ticket. Defendant denies that said disciplinary ticket was bogus or false. Defendant admits that Plaintiff received a disciplinary ticket on September 24, 2012 and that he was escorted to segregation.**

117.   The aforementioned false disciplinary ticket of paragraph #116 was condoned by the shift supervisor Defendant Reese and condoned by the shift reviewing officer Defendant Moore, where Plaintiff was placed within punitive segregation cell North two cell 653 (N-2-653)

**RESPONSE:  Defendant admits that the above disciplinary ticket was reviewed by Evielsizer and Defendant Reese.  Defendant denies that it was a false disciplinary ticket. Defendant admits Plaintiff was placed in segregation following when Plaintiff was issued the ticket.**

118.   On September 24, 2012, Plaintiff was placed within punitive segregation within cell N-2-635, where Plaintiff had to endure the unconstitutional conditions of confinement, the denial of basic human necessities, lack of ventilation due to a closed solid core door and no fan in Plaintiff's segregation cell, and the denial of sheets, a pillow case, a pillow, toilet paper, soap, toothpaste, tooth brush, fan, change of clothing and cleaning supplies such as a mop, broom, and/or anything at all to clean the spit, urin [sic], blood, and other unknown matter off of

Plaintiff's cell sink, toilet, floor, and walls.  Furthermore, Plaintiff was given a soiled cloth mattress that smelled of mold and mildew, where Plaintiff informed/requested of Defendant's (below) to address the aforementioned issues, where the aforementioned conditions were not addressed and condoned by the informed/requested Defendant's R. Davis, J. Reid, J. Miller, Kempfer, Mallory, Whitehopn [sic], Lindenberg, Dilday, and other Doe's, where Plaintiff requested for such items as aforementioned of above Defendants and the above Defendants knowingly, maliciously, sadisticlly [sic] refused to address Plaintiff's aforementioned conditions of confinement.

**RESPONSE:  Defendant admits Plaintiff was placed in segregation on September 24, 2012.  Defendant denies the remainder of paragraph 118.**

119.    On September 27, 2012, Plaintiff was taken to see the Adjustment Committee regarding the aforementioned false/bogus disciplinary ticket of officers, Defendant's, Justin Snell, Allen, and Defendant Forstine as aforementioned within above paragraph's numbers #114 and #116 of this claim, where the Adjustment Committee expunged both of Plaintiff's disciplinary tickets, due to insufficient information.  (See ex #24, 25) (Ex #45)

**RESPONSE:   Defendant denies that the disciplinary ticket was false or bogus. Defendant admits that Plaintiff appeared before the adjustment committee on September 27, 2012.  Defendant admits that both tickets were expunged.**

120.    On September 28, 2012, Plaintiff was moved out of segregation and placed on the weapons violator gallery in West house, eight gallery cell #819 under the unconstitutional conditions of confinement as aforementioned within above claim #6 of this complaint.

**RESPONSE:   Defendant   denies   that   Plaintiff   was   subjected   to   unconstitutional conditions of confinement.   Defendant admits Plaintiff was placed in the weapons violator gallery on or about September 28, 2012.**

121.    The Defendant's aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologically justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### Claim #8

122.    This claim regardes [sic] the first expungement of Plaintiff's displinary [sic] ticket as described within Claim #1 and #2 of this complaint for 104-dangerous contraband and the excessive disciplinary/sanctions imposed on Plaintiff as described within claim's #5, #6, #7, of this complaint by Defendant's Michael Atchinson [sic], Salvidor [sic] Godinez, Sara Johnson, Lori Crafton, John/Jane Doe #1, John/Jane Doe #5, and other Doe's.

**RESPONSE: Defendant admits that Plaintiff alleges in paragraph 122 that Defendants violated his rights.  Defendant denies that they actually violated his rights.**

123.    On April 9, 2012, Plaintiff received a false/bogus disciplinary ticket for 104-dangerous contraband (ticket #201200884/1-men) as described in above claim #1 (ex #2), where Plaintiff ultimately received three months of segregation, 3 months of "C" grade, 3 months lose of good time conduct, three (3) months commissary restriction.  (See ex #12)

**RESPONSE:  Defendant denies that the April 9, 2012 disciplinary ticket was false or bogus.  Defendant admits the remainder of paragraph 123.**

34

124.    On or about July 20, 2012, Plaintiff was taken to see the Prison Review Board regarding Plaintiff's disciplinary ticket aforementioned within this claim, where the Prison Review Board denied Plaintiff's disciplinary infraction of April 09, 2012 as stated in this claim. (Ex #35)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 124.**

125.    Plaintiff was not made aware of the director, Defendant, Salvidor [sic] Godinez's concurring with the Prison Review Boards revocation of Plaintiff's disciplinary ticket of April 09, 2012, as aforementioned until Plaintiff received a response to Plaintiff's grievance on January 15, 2013, where regarding this disciplinary ticket the Administrative Review Board stated, "upon review, the Prison Review Board denied this revocation, which the director concurred with."   (Director, is Defendant Godinez) but Plaintiff's disciplinary ticket was not expunged at the time and/or around the time Plaintiff saw the Prison Review Board or as a result of the director, Defendant Godinez and Prison Review Board on or about July 20, 2012, but was ultimately expunged on January 15, 2013, as a result of Plaintiff's grievance as later described within this complaint.  (See:  Ex #35, #39)

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 125.**

126.    When the director, Defendant, Godinez expunges and/or amends Plaintiff's disciplinary sanctions by reducing and/or other, notice is sent to; warden Menard Correctional Center, Defendant Atchinson [sic]; records officer, Menard Correctional Center, Defendant, Lori A. Crafton; Adjustment Committee, Menard Correctional Center, Defendant John/Jane Doe #5; Plaintiff, David Bentz #S-03210; and other Doe's, where Plaintiff was never notified  that his

disciplinary ticket had been expunged at this time and aforementioned Defendants took no actions to expunge Plaintiff's disciplinary ticket and/or excessive sanctions imposed by Plaintiff and Defendants knowingly, maliciously, inentionaly [sic], disregarded the director's order to expunge Plaintiff's disciplinary ticket and/or disciplinary infractions for reasons not penologicaly [sic] justified.

**RESPONSE:  Defendant denies that they failed to expunge or reduce any discipline required to be expunged or reduced.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 126.**

127.    As a result of Defendant's, Atchinson [sic], Lori Crafton, John/Jane Doe #5, and other Doe's knowingly maliciously, intentionally, disregarding the director, Defendant, Godinez's order to expunge Plaintiff's disciplinary ticket and/or infractions Plaintiff was continued to be treated as a weapons violator as aforementioned within the unconstitutional conditions of confinement as described in claim #5, #6 within this complaint for reasons not penologicaly [sic] justified as later described in complaint.

**RESPONSE:  Defendant denies paragraph 127.**

128.    The Defendant's aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologicaly [sic] justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

**Claim #9**

129.   This claim regards the second expundging [sic] of Plaintiff's disciplinary ticket as described within claim #1, #2, and #8 of this complaint for 104-dangeous contraband ticket and excessive disciplinary/sanctions imposed on Plaintiff as described within claims #5, #6, #7, and #8 of this complaint by Defendant's Rick Harrington, Salvidor [sic] Godinez, John/Jane Doe #1, John/Jane Doe #5, and other Doe's, and Lori Crafton.

   **RESPONSE: RESPONSE: Defendant admits that Plaintiff alleges in paragraph 129 that Defendants violated his rights.  Defendant denies that they actually violated his rights.**

130.   On April 09, 2012, Plaintiff received a false/bogus disciplinary ticket for 104-dangerous contraband (ticket #201200884/1-men) as described in above claims #1, #2 (ex #2), where Plaintiff ultimately received three months of segregation, 3 months of C-grade, 3 months loss of good time, 3 months commissary restriction (see: ex #12)

   **RESPONSE:  Defendant denies that Plaintiff's April 9, 2012 disciplinary ticket was false or bogus.  Defendant admits that Plaintiff accurately listed the discipline he received.**

131.   On or about May 01, 2012, Plaintiff submitted a grievance regarding Plaintiff's disciplinary ticket of April 09, 2012, and fully exhausted said grievance.

   **RESPONSE:   Defendant denies that Plaintiff fully exhausted his grievances. Defendant admits Plaintiff submitted a May 1, 2012 grievance directly to the Administrative Review Board.**

132.   On January 15, 2013, Plaintiff's disciplinary ticket, 104-dangerous contraband on April 09, 2012, was expunged for the second time (see: claim #8) as a direct result of Plaintiff's aforementioned grievance of May 01, 2012.  (Ex #35)

**RESPONSE:  Defendant denies that Plaintiff's April 9, 2012 ticket was expunged on January 15, 2013 for a second time.  Defendant admits that on January 15, 2013 the Administrative Review Board determined that said ticket should be expunged.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 132.**

133.    On or about January 15, 2013, Defendant Salvidor [sic] Godinez, "Concur. Menard's Adjustment Committee is to expunge the above cited reports/summary."   Where Defendant Godinez's order of January 15, 2013, was forwarded to Defendant's as followed: Defendant, Rick Harrington, warden, Menard Correctional Center; Defendant, Lori A. Crafton, record officer, Menard Correctional Center; Defendant John/Jane Doe #5, Adjustment Committee, Menard Correctional Center; David Bentz #S-03210, Plaintiff; and other Does. Where Plaintiff's disciplinary ticket and/or sanctions were not expunged as later described below.

**RESPONSE:  Defendant denies that the relevant discipline was never expunged. Defendant denies that Godinez concurred with Administrative Review Board on January 15, 2013.**

134.    On March 12, 2013, Plaintiff filed a grievance regarding the expungment of Plaintiff's disciplinary ticket of 104-dangerous contraband on April 09, 2012, that was expunged on January 15, 2013, where Plaintiff was still being treated as a weapons violator and other disciplinary sancions [sic] as a result of aforementioned disciplinary ticket.  (ex #39)

**RESPONSE:  Defendant admits that Plaintiff's March 12, 2013 grievance related to Plaintiff's contention that he should not be classified as a weapons violator.**

135.    On March 26, 2013, counselor, Niepert responded to Plaintiff's grievance stating: "Offender's ticket was expunged.  Placement office was notified and the offender will be issued a new I.D. and have the black stripes removed.  Offender will not be awarded monetary compensation as it was previously denied by the ARB.  Offender's aggression level will be reviewed."

**RESPONSE: Defendant admits paragraph 135.**

136.    On April 02, 2013, Plaintiff was moved from weapons violator cell "W-716 to general population cell #W-1001, where Plaintiff was off of weapons violator status and was issued a new I.D. that was a general population I.D. and not a weapons violator I.D. but Plaintiff's weapon violator "black stripes" were not removed as later described in this claim.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny when Plaintiff was not required to wear black and white stripes.  Defendant admits on or about April 2, 2013, Plaintiff was moved from a weapons violator gallery to a general population gallery.  Defendant admits Plaintiff was issued new identification.**

137.    On April 04, 2013, Plaintiff was moved from cell W-1001 to cell W-925, where Plaintiff had made several request of officers for replacement of Plaintiff's weapons violator clothing for general population clothing where Plaintiff was denied and was continued to be marked as a weapons violator.

**RESPONSE:   Defendant admits Plaintiff was moved from W-1001 to W-925 on April 4, 2013.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 137.**

138.    On April 11, 2013, Plaintiff submitted a clothing slip to the clothing department for replacement clothing of Plaintiff's weapon violator clothing, where Plaintiff never received a response.

**RESPONSE:  Defendant lacks sufficient information to knowledge to admit or deny paragraph 138.**

139.    On May 07, 2013, Plaintiff was moved from West house cell #W-925 to the East house cell #E-704.

**RESPONSE: Defendant lacks sufficient information to knowledge to admit or deny paragraph 139.**

140.    On May 07, 2013, Plaintiff requested of officer, Smith to replace Plaintiff's weapons violator clothing with general population clothing because Plaintiff had been requesting for such of West house Defendant's for one month and had been denied, where Smith took Plaintiff to clothing to receive general population clothing.

**RESPONSE: Defendant lacks sufficient information to knowledge to admit or deny paragraph 140.**

141.    On May 07, 2013, all of Plaintiff's disciplinary and/or excessive disciplinary sanctions were taken off of Plaintiff with regards to Plaintiff's disciplinary ticket of April 09, 2012, 104-dangerous contraband, and after Plaintiff's disciplinary ticket had been expunged not just one time but two times.  (Ex. #39)

**RESPONSE:  Defendant lack sufficient information to admit or deny whether on May 7, 2013, Plaintiff's discipline stemming from his April 9, 2012 disciplinary ticket was "taken off."  Defendant denies the remainder of paragraph 141.**

142.    As a result of Defendant's Rick Harrington, Salvidor [sic] Godinez, John/Jane Doe #1, John/Jane Doe #5, and Lori Crafton, and other Doe's knowingly, maliciously, intentionally, disregarding the director, Defendant Godinez's second order to expunge Plaintiff's disciplinary ticket and/or infractions, where Plaintiff was continued to be treated as a weapons violator as aforementioned within the unconstitutional conditions of confinement as described in his claims #5 and #6 within this complaint for reasons not penolgocialy [sic] justified as later described within this complaint.

**RESPONSE:  Defendant denies paragraph 142.**

143.    The Defendant's aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologicaly [sic] justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### Claim #10

144.    This claim regards the torts of official misconduct of the State of Illinois law 720ILCS 5/33-3, due process violations, the violation of the Illinois Constitution and the United States Constitution to cruel and unusual punishment, ex po facto, res-judicatia [sic], and administrative violations under the authority of 3-7-1 and 3-2-2 Illinois statute code of Corrections, and Administrative Directive code 504.80 (p), and in conspiracy against offenders civil right to include this Plaintiff (Bentz) by Defendant's Michael Atchinson [sic], Rick Harrington, Salvidor [sic] Godinez, Sara Johnson, Debbie Knauer, Lori Crafton, Lori Oakley, John Doe #1, John Doe #4, and other John/Jane Doe's.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.   Defendant denies that they actually violated Plaintiff's constitutional rights.**

145.   The Administrative Directive Code 504.80 sub. paragraph (p) clearly states in plain language that the director (Defendant Godinez), deputy director (Defendant John/Jane Doe), or the chief administrator office (Defendants Michael Atchinson [sic], Rick Harrington, Lori Crafton, Lori Oakley, John Doe #1, John Doe #4, and others) "shall not increase the sanctions" recommended by the Adjustment Committee, but he or she may reduce them.   The offender "shall" be sent a copy of any modifications to the Adjustment Committee recommendations.

**RESPONSE: Defendant denies that Plaintiff correctly paired Defendants with their job classifications.   Defendant admits Defendants are not permitted to increase sanctions placed upon Plaintiff by the adjustment committee.**

146.   The chief administrator officer warden Michael Atchinson [sic], and Rick Harrington have knowingly and intentionally with a arbitrary wanton behavior with malice intent.   Has deliberately written/unwritten policy that exceeds their authority and the director Godinez's authority as well as the deputy director's authority by abusing their authority and their discretion, by improperly implementing written and unwritten policies which have not been properly promulgated through the joint committee on Administrative Rules regarding the Illinois Department of Corrections Administrative Directive Code.

**RESPONSE: Defendant denies paragraph 146.**

147.   The (new) written and unwritten policy of the chief administrator officer's warden Michael   Atchinson   [sic]/Rick   Harrington,   is   a   double   standard   of   disciplinary

punishment/sanctions for previous bad acts already adjudged by the Adjustment Committee, which is indirect violation of the aforementioned Administrative Directive Code 504.80 sub. section (p). Prohibits them from increasing the sanctions, warden Michael Atchinson [sic] and/or Rick Harrington, also subjected themselves to official misconduct by acts of in subordination by abusing their authority and exceeding that authority beyond that of their superiors [sic], the director and deputy director of the Illinois Department of Corrections concerning the mandatory language of Administrative Directive Code of 504.80 (p).

**RESPONSE: Defendant admits that Defendants are not permitted to increase discipline issued by the adjustment committee. Defendant denies the remainder of paragraph 147.**

148. The chief administrator officers Michael Atchinson [sic] and Rick Harrington, must follow the Administrative Directive Code implemented by the joint committee on Administrative Rules, which have been promulgated properly and are well established, they are not exempt from doing so:

a. 504.80 (p) prohibit them from increasing sanctions and the mandatory legal language "shall" create a protective liberty intrest [sic] to the offender's to include this Plaintiff.

b. They had thirty (30) days after the Adjustment Committees recommendations to make any modifications, they failed to do so.

**RESPONSE: Defendant denies that regulations endow Plaintiff with rights. Defendant admits that they are not free to disregard regulations and that they are prohibited from increasing discipline issued by the adjustment committee. Defendant lacks sufficient information or knowledge to admit or deny paragraph 147(b).**

43

149.   The mandatory legal language "Shall" creates a protective liberty interest to the offender's to include this Plaintiff triggering due process violations in the case, as well as violations of the Illinois Constitution and the United States Constitution by Defendants practicing cruel and unusual punishment, ex po factor, res-judicatia [sic], and Administrative Violations under the authority of 3-7-1 and 3-2-2 statue code of corrections.  It would/does lead to conspiracy against civil rights, when the director (Godinez) and/or deputy director condone the chief administrator officers Michel Atchinson [sic] and Rick Harringtons, written and unwritten policy decision making authority and their failure to act and enforce the Administrative Directive Code 504.80 (p).

**RESPONSE: Defendant denies paragraph 149.**

150.   The chief administrative officers warden Michael Atchinson [sic] and Rick Harrington have condoned and increased sanctions and other as aforementioned by doing such with offenders to include this Plaintiff who have been labled [sic] and marred as weapons and/or staff asaulters [sic] violators by such as yard restriction and separation from general population, visualy [sic] and publicly marking weapons and/or staff assaulters to include this Plaintiff by putting black stripes on their (Plaintiff's) clothing and restricting them (Plaintiff) to seven (7) and eight (8) galleries within the West house isolating the offenders (Plaintiff) from general population, and by extending the time of a weapons and/or staff assaulter violator in which case by the Adjustment Committee, and placing offenders (Plaintiff) on a weapons and/or staff asaulter [sic] violators list where said was not a sanction of the Adjustment Committee to offenders to include this Plaintiff showing that the chief administrative officers Michael Atchinson [sic] and Rich Harrington are in fact in violation of the aforementioned issues.

**RESPONSE:  Defendant denies paragraph 150.**

151.   The Defendant's aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologicaly [sic] justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### Claim #11

152.   This claim regards the failure to protect this Plaintiff from a known inmate assault and to Plaintiff's health and safety, where Defendants, Brookman, Forstine, Reese, Atchinson [sic], Knauer, Payne, unknown John/Jane Doe's, and others were personaly [sic] made aware of the assaults and risk of assault to this Plaintiff and were deliberately indifferent to Plaintiff's health and safedy [sic] when they refused to respond to Plaintiff's continued request to remidy [sic] the situation.  The Defendants aforementioned refused to take any kind of action at all.

**RESPONSE: Defendant admits paragraph 152 contains allegations relating to a failure to protect claim.  Defendant denies that they violated Plaintiff's rights in any way.**

153.   On September 29, 2012, this Plaintiff was moved from segregation cell North two cell #653 to general population housing unit West, cell #819 and still continued to be treated as a weapons violator as aforementioned within this complaint.

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny whether anyone "treated" Plaintiff as a weapons violator at any given time.  Defendant admits the remainder of paragraph 153.**

154.   During [sic] the months of October, 2012, and throughout January 15, 2013, this Plaintiff made several request to the (all) aforementioned Defendants within this claim to be

moved do to the risk of assault and/or later after assaults occurred, where the aforementioned Defendants in this claim refused to take any kind of preventive measures and/or measures to protect Plaintiff from further assaults.

**RESPONSE: Defendant denies paragraph 154.**

155.   On November 05, 2012, Plaintiff sent a letter to Menard Correctional Centers internal affairs office (I/A.) bringing to I/A's attention of the conditions within Plaintiff's cell and issues with Plaintiff's cell mate, and Plaintiff's countless efforts to be moved to no avail, where Plaintiff never recieved [sic] a response.  (See. exhibit #27)

**RESPONSE:  Defendant lacks sufficient information or knowledge to admit or deny paragraph 155.**

156.   On December 05, 2012, Plaintiff sent a second (2nd) letter to Menard Correctional Centers internal affairs office (I/A) bringing for the second (2nd) time to I/A's attention of the conditions within Plaintiff's cell and the issues with Plaintiff's cell mate, and Plaintiff's countless request to be moved to no avail, where Plaintiff never recieved [sic] a response.  (See exhibit #28)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 156.**

157.   On December 20, 2012, Plaintiff sent a letter to Defendant, Knauer of inmate issues, and a letter to Defendant, warden Atchinson [sic], and to Defendant, Counselor Payne and to internal affairs officers with regards to Plaintiff's issues within Plaintiff's cell and with his cell mate, and Plaintiff's countless request to be moved to no avail, where Plaintiff only recieved [sic] a response from Defendant Knauer but never addressed the issues.  (See exhibits #30, 31, 32, 33)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 155.**

158.    On January 11, 2013, Plaintiff's family, Diane Bentz sent a letter to Defendant, warden, Atchinson [sic] of Plaintiff's issues with his cell mate and furthermore requesting that Plaintiff be moved, and informing Atchinson [sic] of Plaintiffs continued request of staff to no avail.  (See:  exhibit #34) No response was ever recieved [sic].

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 158.**

159.    On January 15, 2013, Plaintiff's family, Gary Bentz sent a e-mail to Menard Correctional Centers wardens office informing the wardens office of issues between Plaintiff and his cell mate and Plaintiff continued request to address the issues to no avail.  Where as a result of this e-mail Plaintiff saw internal affairs officer and was moved later that night after months of trying to have the aforementioned issues addressed to no avail.  (See:  exhibit #36) Plaintiff was moved to West #716.

**RESPONSE: Defendant admits that Plaintiff was moved to a different cell with a different cellmate on January 15, 2013 after an interview with internal affairs.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 159.**

160.    On January 18, 2013, Plaintiff recieved [sic] a letter from his family, Diane Bentz informing Plaintiff that she (Diane) had wrote a letter to Defendant, warden Atchinson [sic] and that Plaintiff's family Gary Bentz had also made phone calles [sic] to Menard Correctional Center and/or other with regardes [sic] to the aforementioned issues within this claim (see: exhibit #37)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 160.**

161.    During the aforementioned dates within this claim Plaintiff in fact did inform of his conditions and issues aforementioned within this claim and did request to be moved several times by Defendants Brookman, Forstine, Reese, Pain [sic] and other John and Jane Doe Defendants where Plaintiff's countless request were ignored furthermore Plaintiff states that he personaly [sic] informed the aforementioned Defendants of all aforementioned issues.

**RESPONSE:   Defendant denies that they ignored any communications from Plaintiff claiming that Plaintiff was in imminent danger of serious bodily harm.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 161.**

162.    The Defendants' aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologicaly [sic] justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### Claim #12

163.    This claim regards the supervisory liability for their failure to act when they had power to correct and/or duty to expunge Plaintiff's displinary [sic] ticket and/or infractions and/or impossing [sic] further displinary [sic] sanctions beyond their authority as described within claim #10 of this complaint by Defendants Michael Atchinson [sic], Rick Harrington, Salvidor [sic] Godinez, Sara Johnson, Debbie Knauer, Lori Crafton, Lori Oakley, John Doe #1,

John Doe #4, John Doe #5, Payne, Lyerla, Moore, Evelsizer, Reese, Tourville, Forstine, Allen, David Johnson, and other John and Jane Does, and Cowan.

**RESPONSE: Defendant admits paragraph 163 contains allegations relating to supervisory liability. Defendant denies that they violated Plaintiff's rights in any way.**

164.    On April 09, 2012, the shift supervisor Defendant Lyerla, and the reviewing officer Defendant Moore, and the hearing investigator Defendant Cowan did after being informed of Plaintiff's displinary [sic] report/ticket for DR-104-Dangerous Contraband failed to remedy the wrong/bogas [sic]/fauls [sic] displinary [sic] ticket and condoned the ticket althow [sic] Plaintiff was not in violation of known rules and regulation to support the displinary [sic] ticket.    (Exhibit #2) the aforementioned Defendants did exhibit deliberate indifference to Plaintiff was/is being punished for unjustifiable reasons not penologicaly [sic] justified.    (Note: Cowan did not interview Plaintiff until next day after he already condoned Plaintiff's ticket)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny who or when Plaintiff was interviewed by regarding his April 9, 2012 ticket. Defendant denies the remainder of paragraph 164.**

165.    On April 12, 2012, the Adjustment Committee, chair person, Defendant, lieutenant, Robert Hughes, and the Adjustment Committee officer, Defendant David Johnson did after being informed of Plaintiff's displinary [sic] report/ticket for DR-104-dangerous contraband and after Plaintiff's cellmate plead guilty to the ticket for the same contraband, where both Defendants failed to remedy the wrong/bogas [sic]/fauls [sic] displinary [sic] ticket and not only condoned for the ticket but took further action and change the facts to punish Plaintiff for reasons but penologicaly [sic] justified as described within this complaint, and furthermore althow [sic] the ticket clearly showed that Plaintiff was not in violation of known rules and regulations to

suport [sic] the displinary [sic] ticket (exhibit #2, #4), the aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to act on and/or alter the information that Plaintiff was/is being and/or would be punished for unjustifiable reasons not penologicaly [sic] justified.  (Exhibit #7)

**RESPONSE: Defendant denies paragraph 165.**

166.   On April 24, 2012, Defendant, warden Atchinson [sic] did review Plaintiff's displinary [sic] ticket for DR-104-dangerous contraband and reviewed the Adjustment Committee's final summary report/recomendations [sic] (exhibit #2, #4) and did not take action to remidy [sic] the wrong but did in fact condone the unjustifiable displinary [sic] sanctions imposed on this Plaintiff (exhibit #2, #4), where Defendant, Atchinson [sic] did exhibit deliberate indifference to Plaintiff when he (Atchinson [sic]) failed to act on information/record that Plaintiff was/is being and/or would be punished for unjustifiable reasons not penologicaly [sic] justified.

**RESPONSE:  Defendant admits that Defendant Atchison or his designee reviewed Plaintiff's adjustment committee summary on April 24, 2012.  Defendant denies the remainder of paragraph 166.**

167.   On May 14, 2012, Defendant, grievance officer, Lori Oakley did review Plaintiff's displinary [sic] ticket (ex #2) and the Adjustment Committee's summary report (exhibit #4) and Plaintiff's grievance (exhibit #10) and did not take action to remidy [sic] the wrong of the aforementioned displinary [sic] ticket and/or Adjustment Committee's summary report as described above within this claim, where Defendant Lori Oakley did exhibit deliberate indifference to Plaintiff when she (Lori Oakley) failed to act on information/records that Plaintiff was/is being and/or would be punished for unjustifiable reasons not penologicaly [sic] justified.

**RESPONSE: Defendant admits that Oakley reviewed Plaintiff's disciplinary ticket, adjustment committee summary, and grievance.   Defendant denies the remainder of paragraph 167.**

168.   On May 15, 2012, Defendant, warden, Atchinson [sic] did review Plaintiff's displinary [sic] ticket (exhibit #2, PH #166) and Plaintiff's grievance, and the grievance officers review/response (exhibit #10, PH #167) and did not take action to remidy [sic] the wrong of the aforementioned displinary [sic] ticket and/or Adjustment Committee's summary report or the grievance officers response to Plaintiff's grievans [sic] as above described within this claim, where Defendant, warden Atchinson did exhibit deliberate indifference to Plaintiff when he (Achinson [sic]) failed to act on information/records that Plaintiff was/is being and/or would be punished for unjustifiable reasons not penologicaly [sic] justified.  (exhibit #10)

**RESPONSE: Defendant admits that Defendant Atchison or his designee reviewed Plaintiff's disciplinary ticket, grievance, and grievance officer's response on May 15, 2012. Defendant denies the remainder of paragraph 166.**

169.   On September 21, 2012, Defendant, warden, Atchinson [sic] did authorize already excessively imposed displinary [sic] sanctions beyond his (Atchinsons [sic]) authority and/or power as above described within claim #10 of this complaint (exhibit #17) and, where other John and Jane Doe Defendants were made aware yet all aforementioned Defendants within this claim did not take action to remedy the wrong of Defendant, warden Atchinson's [sic] official missconduct [sic] to Plaintiff and other inmate simularly [sic] situated, where Defendants Atchinson [sic], and aforementioned did exhibit deliberate indifference to this Plaintiff and other similarly situated inmates when they failed to act on information/memos that Plaintiff and others

were/are being punished unjustifiably for reasons not penologicaly [sic] justified and beyond the official conduct and/or power of Defendant, warden Atchinson [sic] (exhibit #17)

**RESPONSE: Defendant denies paragraph 169.**

170.    On September 23, 2012, the shift supervisor, Defendant Rees, and the reviewing officer Defendant Evelsizer, and the hearing investigator Defendant John Doe did after being informed of Plaintiff's displinary [sic] report/ticket for DR-104-dangerous contraband (exhibit #18) failed to remedy the wrong/bogas [sic]/fauls [sic] displinary [sic] ticket and condoned the ticket althow [sic] Plaintiff was not in any violation of known rules and regulations to suport [sic] the displinary [sic] ticket.  (Exhibit #18).  The aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to act on information that Plaintiff was/is being punished for unjustifiable reasons not penologicaly [sic] justified.

**RESPONSE: Defendant denies paragraph 170.**

171.    On September 24, 2012, the shift supervisor, Defendant Rees, and the reviewing officer Defendant Moore, and the hearing investigator Defendant John Doe did after being informed of Plaintiff's displinary [sic] report/ticket for 206-intimidations or threats; 304-insulence (exhibit #20) failed to remedy the wrong/bogas [sic]/fauls [sic] displinary [sic] ticket and condoned the ticket althow [sic] Plaintiff was not in any violation of known rules and regulations to suport [sic] the displinary [sic] ticket. (exhibit #20).   The aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to act on information that Plaintiff was/is being punished for unjustifiable reasons not penologicaly [sic] justified.

**RESPONSE: Defendant denies paragraph 171.**

172.    On or about July 20, 2012, Plaintiff saw the Prison Review Board (P.R.B.) where the P.R.B. denied Plaintiff's displinary [sic] ticket and/or the revocation thereof, which the

Defendant, Illinois Department of Corrections, director Godinez, and other John and Jane Doe's concurred with the P.R.B (exhibit #35, Claim #5, and PH #92) regarding Plaintiff's displinary [sic] ticket as described in above claims #1, #2, #5, #8, #9, (see: exhibit #2), but the Defendant's aforementioned failed to expunge Plaintiff's displinary [sic] ticket.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 172.**

173.    On or about July 20, 2012, I.D.O.C. director, Defendant Godinez expunged Plaintiff's displinary [sic] ticket (PH #172, exhibit #35).   Where the chief administrator, Defendant warden Atchinson [sic], and the Menard's record officer, Defendant, John/Jane Doe, and the Menard Adjustment Committee, Defendant John/Jane Doe were sent notice and after begin informed of the expungement and compleatly [sic] disregarded the I.D.O.C. director, Defendant, Godinez's orders to expunge Plaintiff's displinary [sic] ticket and displinary [sic] infractions was in violation of I.D.O.C. policy and regulations.   The aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to act on information and orders of I.D.O.C. director Godinez aforementioned to expunge, but continued to impose displinary [sic] sanctions on Plaintiff for unjustifiable reasons not penologicaly [sic] justified.

**RESPONSE: Defendant denies paragraph 173.**

174.    On January 15, 2013, the Illinois Department of Corrections director, Defendant Godinez did after reviewing Plaintiff's displinary [sic] ticket, grievance of Plaintiff and other information did expunge Plaintiff's displinary [sic] ticket ad infractions for the second time (see: above PH #173), where the chief administrator, Defendant, warden, Rick Harrington, and Menard's records officer, Defendant John/Jane Doe, and Menard's Adjustment Committee, Defendant, John/Jane Doe were sent notice (exhibit #35) for the second time to expunge and

after being informed of the second expungement of Plaintiff's displinary [sic] ticket and/or displinary [sic] infractions did fail to remedy the expungement and compleatly [sic] disregarded the Illinois Department of Corrections (I.D.O.C.) director, Defendant, Godinez's orders to expunge Plaintiff's displinary [sic] ticket and displinary [sic] infractions for the second time was in violation of I.D.O.C. policy and regulations.  The aforementioned Defendants did exhibit for the second time deliberate indifference to Plaintiff when they failed to act on information and orders of I.D.O.C. director, Godinez's aforementioned to expunge, but continued to impose displinary [sic] sanctions on Plaintiff for unjustifiable reasons not penologicaly [sic] justified.

**RESPONSE: Defendant denies paragraph 174.**

175.    The Defendants' aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologicaly [sic] justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

**Claim #13**

176.    This claim regards the suppervisory [sic] liability for Defendants Atchinson [sic], Knauer, Rees, Brookman, Forsting, and other John and Jane Doe's failure to act when they had the power to move, address and/or protect Plaintiff as described within claim #11 of this complaint where the aforementioned Defendants exhibited deliberate indifference to Plaintiff.

**RESPONSE: Defendant admits paragraph 176 contains allegations relating to supervisory liability.  Defendant denies that they violated Plaintiff's rights in any way.**

177.    On September 29, 2012, this Plaintiff was placed within housing unit West #819 as described within above claim #11 of this complaint.

**RESPONSE: Defendant admits paragraph 177.**

178.    The first week of October, 2012, or there about Plaintiff started to make several request of Menard staff and of the aforementioned Defendants in this claim to be separated from Plaintiff's cell mate as described within this claim (13) and within claim #11 of this complaint.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 178.**

179.    On November 05, 2012, Plaintiff sent a letter to internal affairs of Menard Correctional center (exhibit #27) describing Plaintiff's issues, attempts to move, conditions and other as described within above claim #11 of this complaint, where after internal affairs officer, John/Jane Doe did not take any action to remedy Plaintiff's issues and/or any actions to protect Plaintiff.  The aforementioned Defendant did exhibit deliberate indifference to Plaintiff when he/she failed to act on information that Plaintiff's issues, conditions, attempts to be moved, and other as described within claim #11 for reasons not penolgocialy [sic] justified.

**RESPONSE: Defendant denies that Plaintiff informed them of an imminent risk of serious bodily injury or that they failed to take appropriate action.  Defendant denies that they violated Plaintiff's rights in any way.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 179.**

180.    From the first week of October 2012, throughout January 15, 2013, Plaintiff made several request to be separated/moved do to several issues as described within claim #11 of this complaint of Defendants Atchinson [sic], Knauer, Rees, Brookman, Forsting, and other John and Jane Doe's who are all supervisors in one shape or form within Menard Correctional Center,

where they did after being informed of Plaintiff's issues, conditions, attempts to be moved, and other as described within above claim #11, failed to take action to remedy Plaintiff's issues, conditions, attempts to be moved and other to protect Plaintiff.  The aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to take action on information that Plaintiff's issues, conditions, attempts to be moved, and other as described within claim #11 for reasons not penologicaly [sic] justified.

**RESPONSE: Defendant denies that Plaintiff informed them of an imminent risk of serious bodily injury or that they failed to take appropriate action.  Defendant denies that they violated Plaintiff's rights in any way.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 180.**

181.   On December 04, 2012, Plaintiff sent a second letter to internal affairs (exhibit #28) of Menard Correctional Center describing a Plaintiff's issues, attempts to be moved, conditions, and other as described within above claim #11 of this complaint, where after internal affairs officer, Defendant John/Jane Doe did not take any action to remedy Plaintiff's issues and/or any actions to protect Plaintiff for the second time.  The aforementioned Defendant did exhibit deliberate indifference to Plaintiff when he/she failed to act on information that Plaintiff's issues, conditions, attempts, to be move, and other as described within claim #11 for reasons for penologicaly [sic] justified.

**RESPONSE: Defendant denies that Plaintiff informed them of an imminent risk of serious bodily injury or that they failed to take appropriate action.  Defendant denies that they violated Plaintiff's rights in any way.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 181.**

182.   On December 20, 2012, Plaintiff sent a letter to inmate issues, counseler [sic], warden Atchinson [sic], and a third letter to internal affairs officer (exhibits #30, 31, 32, 33) describing Plaintiff's issues, attempts to be moved, conditions, and other as described within above claim #11 of this complaint, where after internal affairs officer, Defendant John/Jane Doe, and counseler [sic] Defendant Payne, and inmate issues Defendant John/Jane Doe, and warden Defendant Atchsinon [sic] did not take any action to remedy Plaintiff's issues and/or any actions to protect Plaintiff.   The aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to act on information that Plaintiff's issues, conditions, attempts to be moved, and other as described within claim #11 for reasons not peonologicaly [sic] justified.

**RESPONSE: Defendant denies that Plaintiff informed them of an imminent risk of serious bodily injury or that they failed to take appropriate action.   Defendant denies that they violated Plaintiff's rights in any way.   Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 182.**

183.   On January 11, 2013, Plaintiff's family, Diane Bentz did mail Defendant warden Atchinson [sic] a letter (exhibit #34) and DeDe short informing Defendants Atchinson [sic] and short of Plaintiff's several letters requesting to be moved and problems with Plaintiff's cell mate, and of Plaintiff being assaulted and that Plaintiff's request continue to be ignored and where Plaintiff is told to engage in a fight so that assault and battery charges can be made and taken to court, where Diane request Plaintiff to be moved and of her (Diane's) fear for Plaintiff's wellbeing and life and of Plaintiff being further assaulted.   Where after Defendants Atchinson [sic], and short were informed did not take any action to remedy Plaintiff's issues and/or any actions to protect Plaintiff.   The aforementioned Defendants did exhibit deliberate indifference to Plaintiff when they failed to act on information of Plaintiff's issues, conditions, attempts to be

moved, and other as described within claim #11 of this complaint for reasons not penologicaly [sic] justified.

**RESPONSE: Defendant denies that Plaintiff informed them of an imminent risk of serious bodily injury or that they failed to take appropriate action.  Defendant denies that they violated Plaintiff's rights in any way.  Defendant lacks sufficient information or knowledge to admit or deny the remainder of paragraph 183.**

184.    On January 15, 2013, Plaintiff's family Gary Bentz did send an e-mail to Defendant, Short (exhibit #36) of the wardens office at Menard Correctional Center informing Defendant, Short anothe [sic] Menard wardens office of the assaults, issues, and other as described with Plaintiff's cell mate and Plaintiff letters to Defendant warden Atchinson [sic] and request of correctional officers to no avail, where after the aforementioned issue of being moved was finaly [sic] addressed by Menard Correctional Center's internal affairs officer lieutenant, Ashbrook (exhibit #36)

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 184.**

185.    On January 15, 2013, Plaintiff was finally moved out of Menard's housing unit West cell #810 and into West (7) gallory [sic].

**RESPONSE: Defendant admits paragraph 185.**

186.    On January 18, 2013 Plaintiff's family Diane Bentz sent Plaintiff a letter (exhibit #37) informing Plaintiff that she (Diane) wrote a letter to Defendant warden Atchinson [sic], and that Plaintiff's family Gary Bentz made several calls to the department regarding the aforementioned within this claim and/or claim #11 of this complaint.

**RESPONSE: Defendant lacks sufficient information or knowledge to admit or deny paragraph 186.**

187.   The Defendants' aforementioned within this claim absolutely do not have impunity when they infringe the constitutional authority that penologicaly [sic] justifies sound decision making in the daily operations of prison.

**RESPONSE: Defendant admits that they are prohibited from violating Plaintiff's constitutional rights.  Defendant denies that they actually violated Plaintiff's constitutional rights.**

### REQUEST FOR RELIEF

1.   Defendant denies that Plaintiff is entitled to nominal damages.

2.   Defendant denies that Plaintiff is entitled to compensatory damages.

3.   Defendant denies that Plaintiff is entitled to punitive damages.

4.   Defendant denies that Plaintiff is entitled to a declaratory judgment.

5.   Defendant denies that Plaintiff is entitled to any relief whatsoever.

### AFFIRMATIVE DEFENSES

**1. Qualified Immunity**

At all times relevant herein, Defendant acted in good faith in the performance of her official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendant is therefore protected from suit by the doctrine of qualified immunity.

**2. Sovereign Immunity**

Plaintiff's complaint for monetary damages against Defendant in her official capacity is barred by sovereign immunity.

### 3. Heck v. Humphrey

To the extent Plaintiff's allegations require the invalidity of any discipline that resulted in the loss of good time credit, these allegations are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

### 4. Exhaustion

No action shall be brought with respect to prison conditions until all available administrative remedies are exhausted. 42 U.S.C. 1997e(a).  Plaintiff filed suit concerning prison conditions while in custody of IDOC and failed to properly exhaust his administrative remedies prior to filing suit.  Plaintiff's suit is therefore barred by 42 U.S.C. § 1997e(a).

<center>**JURY DEMAND**</center>

Defendant demands trial by jury.

Wherefore, for the above and foregoing reasons, Defendant respectfully requests that this Honorable Court deny Plaintiff's requested relief.

Respectfully Submitted,

VICKI WOOD,

    Defendant,

LISA MADIGAN, Attorney General
State of Illinois,

    Attorney for Defendant,

By:___sMatthew Tamul_____
    Matthew Tamul, #6317409
    Assistant Attorney General
    500 South Second Street
    Springfield, Illinois  62706
    Phone: (217) 782-9014
    Fax: (217) 524-5091
    E-Mail: mtamul@atg.state.il.us

<center>60</center>

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

DAVID R. BENTZ, #S-03210,            )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )            Case No. 14-1132-SMY-PMF
                                    )
MICHAEL ATCHISON, et al.,           )
                                    )
            Defendants.             )
                                    )

**CERTIFICATE OF SERVICE**

       I hereby certify that on February 2, 2016, I electronically filed the foregoing Defendants' Answer and Affirmative Defenses with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:
<div align="center">None</div>

and I hereby certify that on February 2, 2016, I mailed by United States Postal Service, the document to the following non-registered participant:

<div align="center">

David R. Bentz, #S-03210
Menard Correctional Center
711 Kaskaskia Street
P.O. Box 1000
Menard, IL 62259

</div>

                                 Respectfully Submitted,

                                 s/Matthew Tamul
                                 Matthew Tamul, #6317409
                                 Assistant Attorney General
                                 500 South Second Street
                                 Springfield, Illinois  62706
                                 Phone: (217) 782-9014
                                 Fax: (217) 524-5091
                                 E-Mail: mtamul@atg.state.il.us