IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID ROBERT BENTZ, S03210, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-01132-SMY-RJD |
| | ) | |
| MICHAEL ATCHINSON, | ) | |
| RICHARD HARRINGTON, | ) | |
| SALVADOR GODINEZ, | ) | |
| SARA JOHNSON, | ) | |
| RICHARD MOORE, | ) | |
| DOUGLAS LYERLA, | ) | |
| BRANDON DILDAY, | ) | |
| WILLIAM REESE, | ) | |
| JOHN TOUVILLE, | ) | |
| ROBERT HUGHES, | ) | |
| KENT BROOKMAN, | ) | |
| RAY ALLEN, | ) | |
| CHAD FORSTING, | ) | |
| GREG KORANDO, | ) | |
| DONALD LINDENBERG, | ) | |
| CHRISTOPHER McCLURE, | ) | |
| NICHOLAS BEBOUT, | ) | |
| MICHAEL BAKER, | ) | |
| RYAN DAVIS, | ) | |
| DAVID JOHNSON, | ) | |
| JESSE REID, | ) | |
| JEFF MILLER, | ) | |
| JUSTIN KEMPFER, | ) | |
| RICHARD RANSOM, | ) | |
| BRIAN KULICH, | ) | |
| JUSTIN SNELL, | ) | |
| JAMES MALLORY, | ) | |
| SUSAN EASTON, | ) | |
| REBECCA COWAN, | ) | |
| DEBBIE KNAUER, | ) | |
| LORI CRAFTON, | ) | |
| JERRY WITTHOFT, | ) | |
| VICKI WOOD PAYNE and | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**Yandle, District Judge**:

Pending before the Court is Defendants' Partial Motion for Summary Judgment (Doc. 130). Plaintiff filed a response in opposition. For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## Background

Plaintiff David Bentz, an inmate at Menard Correctional Center ("Menard"), brings this lawsuit pursuant to 42 U.S.C. § 1983, asserting that various Illinois Department of Corrections ("IDOC") employees violated his constitutional rights. On October 1, 2015, the Court screened Bentz's Complaint pursuant to 28 U.S.C. § 1915A (Doc. 12), finding that Bentz articulated the following colorable claims:

> **Count 1:** First Amendment retaliation claim against Defendants Christopher McClure, Douglas Lyerla, Richard Moore, "Cowan,"[1] Michael Baker, Brian Kulich, and John Doe Badge #3835 for participating in and/or condoning the issuance of a false disciplinary report against Plaintiff on April 9, 2012; and against Defendant Nicholas Bebout for denying Plaintiff access to the law library that same day in response to Plaintiff filing lawsuits against correctional officers.
>
> **Count 2:** Fourteenth Amendment due process claim against Defendants Robert Hughes and David Johnson for refusing to hear evidence in Plaintiff's defense at his disciplinary hearing on April 12, 2012 and finding Plaintiff guilty in the absence of any evidence in support of that conclusion.
>
> **Count 3:** Eighth Amendment conditions of confinement claim against Defendants Ryan Davis, Jesse Reid, Jeff Miller, Jerry Witthoft, James Mallory, and Donald Lindenberg for their deliberate indifference to the conditions of Plaintiff's confinement (namely excessive heat, unsanitary cell conditions, and lack of water) while he was in segregation from April 9, 2012 until July 9, 2012.
>
> **Count 4:** Eighth Amendment conditions of confinement claim against Defendants Ryan Davis, Jesse Reid, Jeff Miller, Justin Kempfer, James Mallory, Jerry Witthoft, Donald

---

[1] Menard employee Rebecca Cowan was served with Bentz's complaint and filed an answer. Bentz later informed the Court that Rebecca Cowan is the wrong person, and that he intended to bring suit against a male Menard employee named Cowan who worked in the prison Internal Affairs office. However, Bentz's request for substitution of parties was denied.

Lindenberg, and Dilday[2] for their deliberate indifference to the conditions of Plaintiff's confinement while he was in segregation from September 24, 2012 until September 28, 2012.

**Count 5:** Eighth Amendment conditions of confinement claim against Defendants Ray Allen, Nicholas Bebout, Kent Brookman, Chad Forsting, "Dilday," Susan Easton, John Touville, Justin Snell, Greg Korando, Vicki Wood Payne, and Richard Ransom for the conditions he endured (namely unsanitary cell conditions) while housed within the weapons violator housing unit from July 2012 until May 7, 2013.

**Count 6:** Fourteenth Amendment due process claim against Defendants Salvador Godinez, Michael Atchinson, Richard Harrington, Sara Johnson, Debbie Knauer, and Lori Crafton for designating Plaintiff a "weapons violator" and imposing additional disciplinary sanctions (beyond those recommended by the Adjustment Committee) on him without a hearing.

**Count 7:** Eighth Amendment failure to protect claim against Defendants Kent Brookman, Chad Forsting, William Reese, Mike Atchinson, Debbie Knauer, and Vicki Wood Payne for refusing to intervene to protect Plaintiff from his cellmate from October 2012 until January 2013.

The defendants now seek summary judgment as to all of Bentz's claims except for the failure to protect claims against Defendants Brookman, Forsting, Reese and Wood (Payne) in Count 7.

The following facts are taken from Bentz's deposition unless otherwise noted. Bentz has been in IDOC custody since 2009. He first arrived at Menard in late 2011 (Doc. 131-1, p. 23). The events that form the basis of this lawsuit began on April 9, 2012 (*Id*. at pp. 24-25). On that date, Bentz asked Correctional Officer Bebout if he could use the law library because he had an impending deadline in another lawsuit (*Id*. at p. 25). Bebout told Bentz that he did not care about his deadline, and that he would not be going to the law library due to the fact that he had filed lawsuits against corrections staff (*Id*. at p. 25). Bentz also asked Correctional Officer Brian Kulich if he could use the law library, but Kulich also denied Bentz permission (*Id*. at p. 27).

---

[2] Menard employee Brandon Dilday was served with Bentz's complaint and filed an answer. Bentz later informed the Court that Brandon Dilday is the wrong defendant, and that he intended to bring suit against a "Major Dilday." Again, Bentz's request for substitution of parties was denied.

According to Bentz, the correctional officers working in the housing unit were generally aware that he had filed previous lawsuits (*Id*. at p. 25).

Two or three hours after the discussion with Bebout, Correctional Officers Christopher McClure and Brian Kulich performed a shakedown of Bentz's cell (*Id*. at p. 25). While the cell was being inspected, Bentz and his cellmate were placed in the housing unit shower area (*Id*. at p. 25). During this period Correctional Officer Michael Baker and another unknown correctional officer commented on the fact that Bentz had filed lawsuits against IDOC employees, and proceeded to make threatening remarks towards Bentz (*Id*. at p. 25). Sometime shortly thereafter, Bentz and his cellmate were escorted to another holding area and were informed by Defendant Richard Moore that contraband had been found in their cell (*Id*.). McClure and Kulich found a makeshift weapon consisting of a five inch piece of metal inside a property box belonging to Bentz's cellmate (*Id*.).

Bentz received a disciplinary ticket for having dangerous contraband in his cell. The disciplinary ticket was drafted by McClure and Kulich (Doc. 131-1, p. 25). It was then approved by Defendants Moore and Douglas Lyerla (*Id*.).

On April 10, 2012, Bentz was interviewed by Menard Internal Affairs employee "Cowan." Cowan asked Bentz about the makeshift weapon found in his cell (*Id*. at p. 27). Bentz denied ownership of the weapon and told Cowan that it belonged to his cellmate (*Id*. at p. 27). The two then discussed some of Bentz's other litigation and Bentz returned to his cell (*Id*. at p. 27).

On April 12, 2012, the Menard Adjustment Committee held a hearing on Bentz's dangerous contraband disciplinary ticket (*Id*. at p. 33). The committee was comprised of Defendants Robert Hughes and David Johnson (*Id*.). During the hearing, Hughes and Johnson

asked if Bentz would like to plead guilty or not guilty to the dangerous contraband disciplinary report (*Id*. at p. 33).  Bentz pleaded not guilty (*Id*.).  Hughes and Johnson then questioned Bentz as to whether he was affiliated with any gangs (*Id*.).  Bentz told them "no." (*Id*.).  At that point, Hughes and Johnson concluded the hearing and told Bentz that he was free to leave. (*Id*.).  Bentz was not permitted to make a statement at the hearing nor was he allowed to introduce documents in his defense (*Id*.).

Following the hearing, the Adjustment Committee found Bentz guilty and issued a punishment consisting of six months of "C Grade," six months of segregation, a revocation of six months of good time credit, and a six month commissary restriction (Adjustment Committee Final Summary Report, Doc. 1-1, p. 13).  Bentz appealed the disciplinary action to the IDOC Administrative Review Board ("ARB"), and on June 1, 2012, the ARB reduced the disciplinary period from six months to three months (ARB Ruling, Doc. 1-1, p. 23).  Bentz again appealed the ruling.  On January 15, 2013, the ARB completely expunged the disciplinary ticket (ARB Ruling, Doc. 1-2, p. 8).  However, by that time, Bentz had already served the three months in segregation (from April 9, 2012 through July 9, 2012).

Bentz claims that during his three months in segregation, the cell conditions were filthy and unfit for human habitation (Doc. 131-1, p. 48).  When Bentz first arrived in segregation, he was placed in cell 754 in the North 2 cell house (*Id*. at p. 49).  At some point during the three month period, he was transferred to cell 852 in the same cell house (*Id*.).  While in cell 754, Bentz slept on a soiled cloth mattress, did not have a pillow, he was not provided cleaning supplies, the cell was generally filthy, and the toilet was broken and leaked out onto the floor. (*Id*.).  The cell also smelled of urine and mildew (*Id*.).  The conditions in cell 852 were essentially the same as those in cell 754 (*Id*. at p. 53).  The only differences were that the toilet

functioned properly in cell 852 and that cell 852 became unbearably warm on multiple occasions (reaching 110 degree) (*Id*. at p. 52). While in segregation, Bentz notified Defendants Ryan Davis, Jesse Reid, Jeff Miller, Jerry Witthoft, James Mallory and Donald Lindenberg of the issues with the cells (*Id.* at p. 53). However, the defendants failed to correct the problems (*Id*.).

After Bentz was released from segregation in July 2012, he was placed on "black striper" status (Doc. 131-1, p. 43). An inmate may be designated as a black striper if a weapon is found in his possession or if he has assaulted a staff member.[3] Black striper inmates wear black and white striped uniforms, are kept in special housing units, are provided with unique identification cards, and are generally kept separate from the inmates in general population (*Id*.) Bentz received black striper designation due to his April 9, 2012 disciplinary ticket, but did not receive a separate hearing prior to receiving the designation (*Id.* at p. 41).

After the ARB expunged the disciplinary ticket in January 2013, Bentz remained on black striper status for another three months (*Id*.). He filed grievances and sent letters to Defendant IDOC Director Salvador Godinez protesting his black striper status, but Godinez declined to intervene (*Id*. at p. 41). Bentz also discussed the issue with Warden Richard Harrington in early 2013, but Warden Harrington failed to provide any assistance with the issue (*Id*. at p. 42). Additionally, Bentz sent letters addressing the disciplinary issue to Sara Johnson and Debbie Knauer, both IDOC employees at the Office of Inmate Issues in Springfield (*Id*. at p. 44). Johnson and Knauer did not respond to Bentz's letters (*Id.* at p. 44).[4]

Bentz received two other disciplinary tickets in late September 2012. On September 23, 2012, Menard staff members performed a shakedown on Bentz's cell and issued Bentz a

---

[3] Defendant Warden Mike Atchinson approved the Menard "weapons violator" policies in late 2012 (Doc. 131-1, p. 42).

[4] Bentz also stated in his complaint that Menard Records Supervisor Lori Crafton violated his due process rights by failing to correct the weapons violator disciplinary issue, but at Bentz's deposition he agreed to withdraw the claim against her. (Doc. 131-1, p. 45).

disciplinary ticket for possessing dangerous contraband (Doc. 131-1, p. 46). The disciplinary ticket states that Correctional Officer Justin Snell found a fan in Bentz's cell that had been altered, a "gang letter," and other various items of contraband (Disciplinary Report, Doc. 1-1, p. 28). Bentz was issued the disciplinary ticket on the evening of September 23, 2012, and was escorted to a segregation cell the following day (Doc. 131-1, p. 47).

Bentz received another disciplinary ticket on September 24, 2012, due to an incident that occurred while he was being escorted to segregation (*Id.*). The record is not very clear, but Bentz testified at his deposition that he thought the contraband ticket was baseless and that date he told Correctional Officer Snell that he would "see him in court" (*Id.* at pp. 47-48). Correctional Officer Chad Forsting then issued Bentz a disciplinary ticket for "Intimidation or Threats" and "Insolence" (Disciplinary Ticket, Doc. 1-1, p. 35).

On September 27, 2012, the Menard Adjustment Committee held hearings on Bentz's two disciplinary tickets and dismissed both tickets due to "insufficient information" (Adjustment Committee Reports, Doc. 1-1, pp 34-35). Menard officials released Bentz from segregation the following day.

During the September 24, 2012 through September 28, 2012 segregation period, Bentz was located in cell 653 in the North 2 Cell House (Doc. 131-1, p. 54). Bentz testified at his deposition that the cell was filthy and that the mattress smelled of mold (*Id.*). Menard officials provided Bentz with sheets and a blanket but no pillow. *Id.* The cell floor and walls were covered in bodily floods (*Id.*). Bentz was not provided any cleaning supplies during this period. (*Id.*). The air in the cell was stagnant – there was little airflow because the cell had a solid door (*Id.*). Bentz complained of the cell conditions to Defendants Ryan Davis, Jesse Reid, Jeff Miller,

Jerry Witthoft, Justin Kempfer, James Mallory, Donald Lindenberg and "Dilday", but the defendants did not provide any assistance (*Id*.).

Bentz also asserts that the conditions of confinement he experienced at various times from July 2012 through May 2013 violated his Eighth Amendment rights. After Bentz was released from segregation in July, 2012, he was placed in the West cell house weapons violator gallery (Doc. 131-1, p. 61). During this period, he was provided inadequate cleaning supplies (*Id*. at p. 62). Menard employees provided Bentz with a cup of disinfectant every other week or so, but the disinfectant was fairly diluted (*Id*.). Additionally, the electrical outlets in the cells are located near the sink, but the outlets are not GFCI compliant (*Id*.). Bentz complained of the conditions of confinement to Defendants Ray Allen, Nicholas Bebout, Kent Brookman, Chad Forsting, "Dilday," Susan Easton, John Touville, Justin Snell, Greg Korando, and Richard Ransom, but the defendants failed to correct the conditions (*Id.* at p. 66). Bentz also submitted grievances to his counselor, Vicki Wood Payne, but she also failed to provide assistance (*Id*. at p. 66).

Bentz also alleges that from September 29, 2012 through January 15, 2013, he was placed in a cell with a dangerous cellmate (cell 819 in the West cell house) (Doc. 131-1, pp. 66-67). Relations between Bentz and his cellmate began to sour early the following month (*Id*. at p. 68). The two began to threaten one another and engaged in shoving matches (*Id.* at p. 68). Bentz and his parents sent letters to Warden Mike Atchinson informing him of the issue (*Id.* at p. 69). Bentz also told Defendants Kent Brookman, Chad Forsting, William Reese, and Counselor Vicki Wood as they walked the gallery (*Id*. at p. 71). Bentz also sent a letter to Debbie Knauer at the Office of Inmate Issues in Springfield (*Id.* at pp. 19, 73). The defendants refused to transfer Bentz to a different cell and told him that they would not move him unless he physically fought

with his cellmate (*Id*. at p. 71). Bentz was finally transferred to a different cell on January 15, 2013 after the Menard Internal Affairs office intervened (*Id.* at p. 71). He did not suffer any physical injuries as a result of being placed with the cellmate (*Id*. at p. 74).

### Discussion

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court must construe all facts and draw all reasonable inferences in favor of the nonmoving party. *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 805 (7th Cir. 2014).

*Statute of Limitations*

Claims filed under § 1983 are "subject to the statute of limitations for personal injury actions in the state in which the alleged injury occurred." *Behavioral Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). In Illinois, the statute of limitations for personal injury actions is two years, *see* 735 ILCS 5/13–202. Thus, Bentz's claims are subject to the same two year statute of limitations. *See, e.g., Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). The defendants argue that the following claims are time barred: the retaliation claims against Defendants Bebout and Kulich in Count 1, the conditions of confinement claims arising out of the April 9, 2012 through July 9,

2012 segregation period in Count 3, and the conditions of confinement claims arising out of the September 24, 2012 through September 28, 2012 segregation period in Count 4.

Although Defendants present colorable arguments that these claims are time barred, they failed to raise the statute of limitations affirmative defense in their Answer. The statute of limitations period for § 1983 claims is not jurisdictional and therefore, may be waived. *See, e.g., Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997). Defendants sought leave to file an amended answer adding the statute of limitations affirmative defense at the same time they filed the instant motion for summary judgment (Doc. 129). However, Magistrate Judge Reona Daly denied Defendants' motion, noting that they were seeking to add the affirmative defense almost one year after filing their initial Answer and that the deadline to amend pleadings had already passed.

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, affirmative defenses must be raised in a defendant's Answer. A district court may permit a defendant to amend their Answer pursuant to Rule 15(a), but "the defendant remains obligated to act in timely fashion." *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). "Once the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense" (*Id.*). Here, the only explanation offered by Defendants for the delay is that the timeliness issue was not immediately apparent from Bentz's Complaint. But this Court screened the Complaint on October 1, 2015. The issue could have been raised at a much earlier date – Defendants clearly did not act in a timely fashion. As such, they have waived the affirmative defense.

*Count 1*

Next, Defendants argue that McClure, Lyerla, Moore, Cowan, Baker, and Kulich, are entitled to summary judgment as to Bentz's retaliation claim in Count 1. Bentz asserts that these Defendants issued him a false disciplinary report on April 9, 2012, in retaliation for engaging in protected First Amendment activity (i.e., filing previous lawsuits). In order for Bentz to establish a First Amendment retaliation claim, he must show "that he engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot*, No. 14-2478, 2017 WL 3474048, at *2 (7th Cir. Aug. 14, 2017). The deprivation suffered must be of such a severity to deter "a person of ordinary firmness from exercising First Amendment activity in the future." *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (cite and quote omitted). Moreover, the filing of non-frivolous grievances and lawsuits protesting conditions of confinement constitute protected First Amendment activities. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Here, the defendants do not appear to dispute that Bentz has engaged in protected First Amendment activity or that being issued a disciplinary ticket for dangerous contraband is a sufficiently serious deprivation to implicate the First Amendment. The only question is whether there is sufficient evidence from which a jury could reasonably conclude that Bentz's litigation activities were a motivating factor in the decision to issue the disciplinary report.

When Bentz's cell was searched on April 9, 2012, Defendant McClure found dangerous contraband in Bentz's cellmate's property box. Although Bentz alleges that the item belonged to his cellmate, he does not dispute that contraband was found in his cell. When Bentz initially submitted a grievance on the issue to the Menard grievance office, the Grievance Officer stated,

"All inmates are responsible for everything in their cells at all times" (Doc. 1-1, p. 20). Moreover, an item of contraband that belonged to one of two inmates is sufficient to constitute "some evidence" to satisfy due process concerns. *See Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (inmate's 25% chance of possession of contraband "some evidence" of guilt so as to not violate Fourteenth Amendment due process clause).

Despite any offhand remarks the defendants may have made suggesting that they were punishing Bentz for his litigation activities, Menard staff was justified in issuing the disciplinary ticket when they found contraband in Bentz's cell. The fact that the ticket was later expunged does not mean that it was unlawful or issued in retaliation. Therefore, no reasonable jury could find that Defendants McClure, Lyerla, Moore, Cowan, Baker, and Kulich retaliated against Bentz by issuing the disciplinary ticket.

However, Defendants Kulich and Bebout do not seek summary judgment on the merits as to the law library retaliation claim in Count 1. As such, Bentz shall be allowed to proceed on that claim as to these defendants.

*Count 2*

Defendants Robert Hughes and David Johnson argue that they are entitled to summary judgment as to Bentz's claims asserted in Count 2, that they denied him adequate procedural due process at the April 12, 2012 disciplinary hearing. The Fourteenth Amendment states in part, "No State shall … deprive any person of life, liberty, or property, without due process of law[.]" If a prisoner is to be deprived of a liberty interest, that prisoner is entitled to specific due process protections. A prisoner's due process liberty interest is typically triggered in two scenarios: when a prisoner loses good time credits (thereby lengthening the overall period of incarceration) *see Wolff v. McDonnel*, 418 U.S. 539, 554, 94 S. Ct. 2963, 2973, 41 L. Ed. 2d 935 (1974); or

when prison officials impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). An "atypical and significant hardship" may arise when an inmate is placed in disciplinary segregation for an extended period of time. *See, e.g.*, *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009).

Bentz did not lose good time credits, but he did spend 90 days in disciplinary segregation as a result of the April 12, 2012 hearing. When determining whether a prisoner is subjected to an atypical and significant hardship, courts consider the duration of the hardship and the specific conditions of confinement. *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015). Courts have not adopted precise, bright line standards for making such a determination. However, the Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 487, 115 S. Ct. 2293, 2302, 132 L. Ed. 2d 418 (1995), that a prisoner's 30 day period in disciplinary segregation did not warrant due process protections. Longer periods, such as those lasting six months or more, will clearly implicate due process protections. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 699 (7th Cir. 2009) (240 day period in segregation sufficient to state due process claim); *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997) (one year in segregation sufficient to state due process claim). That said, neither the Seventh Circuit nor the Supreme Court has specifically held that a 90 day period of segregation constitutes an atypical and significant hardship. *See Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017) ("Smith's 30 days in investigative segregation and approximately 3 months in disciplinary segregation [at Hill Correctional Center] were not long enough to raise a concern under the Due Process Clause"); *Castillo v. Johnson*, 592 F. App'x 499, 502 (7th Cir. 2014) (two month period at Tamms "Supermax" facility too short to create a liberty interest); *Hardaway v. Meyerhoff*, 734 F.3d 740, 741 (7th Cir. 2013)

(Defendant IDOC employees at Menard entitled to qualified immunity on prisoner plaintiff's due process claim that he did not receive a hearing prior to being placed in disciplinary segregation for six month period); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (placement in administrative segregation for 59 days did not give rise to liberty interest); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (90 days in segregation at Stateville did not give rise to liberty interest).

In light of above-referenced authority, this Court concludes that Bentz's period in segregation did not constitute an atypical and significant hardship and therefore, he was not wrongfully denied procedural due process protections. Therefore, Defendants Robert Hughes and David Johnson are entitled to summary judgment as to Count 2.

***Counts 3 and 4***

Bentz will be allowed to proceed on his conditions of confinement claims in Count 3 and Count 4. Defendants contend that those claims are time barred, but do not otherwise seek summary judgment on the merits of the claims. As previously noted, Defendants have waived the statute of limitations argument. Bentz's conditions of confinement claims in Count 3 against Defendants Ryan Davis, Jesse Reid, Jeff Miller, Jerry Witthoft, James Mallory, and Donald Lindenberg arising out of Plaintiff's placement in segregation from April 9, 2012 through July 9, 2012 shall proceed to trial. Bentz shall also proceed on Count 4 against Defendants Ryan Davis, Jesse Reid, Jeff Miller, Jerry Witthoft, James Mallory, Donald Lindenberg, and Justin Kempfer for his conditions of confinement claim based on the September 14, 2012 through September 28, 2012 period in segregation.[5]

---

[5] Summary judgment shall be granted, however, to Defendant Dilday as to Count 4. Bentz previously informed the Court that "Dilday" was erroneously named as a defendant in this matter.

*Count 5*

In Count 5, Bentz asserts that he was subjected to unconstitutional conditions of confinement while housed in various cells in the West House weapons violator unit from July 2012 through May 2013. He alleges that the cells were generally dirty and that he was only provided with disinfectant once every other week or so. Bentz also noted that the electrical wiring in the cells posed a safety hazard. In order to establish an Eighth Amendment violation, Bentz must demonstrate that he was subjected to an objectively serious deprivation, and that the defendants were deliberately indifferent to it. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Inmates have an Eighth Amendment right to be provided the "minimal civilized measure of life's necessities" such as food, clothing and sanitation. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981). However, "the Constitution does not mandate comfortable prisons[,]" *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981), and the Seventh Circuit has only recognized an Eighth Amendment violation due to lack of cleaning supplies in "extreme circumstances." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016); *see e.g., Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007) (inmate at Menard presented sufficient evidence to survive summary judgment on Eighth Amendment claim where cell floor was covered in water, the toilet was broken, and feces and blood was smeared on the walls); *Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996) (plaintiff stated conditions of confinement claim after being exposed to "significant" cockroach infestation for 16 months). While a single aspect of an inmate's conditions of confinement may not violate the Eighth Amendment by itself, courts are directed to take a "holistic" view and consider all of the conditions of confinement to determine whether an Eighth Amendment

violation has occurred. *Gray v. Hardy*, 826 F.3d 1000, 1005-1006 (7th Cir. 2016) ("[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so").

Here, no reasonably jury could find that the conditions of confinement in the weapons violator gallery were so harsh as to constitute an Eighth Amendment violation. Bentz was provided with cleaning supplies "every other week or so," and his cells contained a working toilet and sink. The cells may not have been as clean as Bentz would have liked, but the conditions were not sufficiently severe to implicate the Eighth Amendment. As such, the defendants are entitled to summary judgment on Count 5.

*Count 6*

In Count 6, Bentz alleges that Defendants Salvador Godinez, Michael Atchinson, Richard Harrington, Sara Johnson, Debbie Knauer, and Lori Crafton[6] violated his Fourteenth Amendment due process rights by designating him a "weapons violator" and imposing additional disciplinary sanctions on him without a hearing. Inmates who have been deemed a weapons violator or staff assaulter are required to wear the black and white striped uniform, live in special housing units, and go to different recreation yard apart from the inmates in general population. Defendants argue that they are entitled to summary judgment on the basis that the black striper classification does not implicate a liberty interest. Alternatively, they argue that they are entitled to qualified immunity.

Upon review of the record, the Court finds that Defendants are entitled to summary judgment as to Count 6 on the basis of qualified immunity. "Public officials performing discretionary functions are entitled to qualified immunity from civil damages insofar as their

---

[6] During his deposition, Bentz notified defense counsel that he intended to withdraw the claim against Defendant Lori Crafton.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (internal quotation marks omitted). The Supreme Court has established a two part test to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). If so, was the law clearly established when the defendant's alleged unlawful conduct occurred? (*Id.*). The two questions may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009).

Here, Defendants correctly note that inmates do not have a liberty or property interest in prison classifications and job assignments. *See Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991). While the conditions of confinement for black striper inmates are less favorable than the conditions in general population, the black striper program is not analogous to being placed in disciplinary segregation. Additionally, as no court has specifically held being placed in the black striper program triggers Due Process protections, the law was not clearly established at the time the alleged violations occurred that inmates have a liberty interest in avoiding the black striper program. Therefore, summary judgment shall be granted in favor of the defendants on Count 6.

### *Count 7*

Finally, in Count 7, Bentz proceeds on an Eighth Amendment failure to protect claim against Defendants Kent Brookman, Chad Forsting, William Reese, Mike Atchinson, Debbie Knauer, and Vicki Wood Payne, for failing to intervene to protect Plaintiff from his cellmate from October 2012 until January 2013. Only Defendants Mike Atchinson and Debbie Knauer seek summary judgment.

Mike Atchinson was the warden at Menard during the relevant period. Bentz asserts that he and his parents wrote letters to Atchinson warning him of the cellmate issue, and that he spoke to Atchinson as he passed through his cell house. Debbie Knauer is an employee at the IDOC Office of Inmate Issues in Springfield, Illinois. Bentz testified at his deposition that he contacted Knauer through written correspondence and that she told him to resolve the issue through his counselor. Bentz and the cellmate were finally separated in mid-January 2013.

The Eighth Amendment imposes a duty upon prison officials to "take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Prison officials violate the Eighth Amendment if they demonstrate deliberate indifference to conditions of confinement that pose a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. "Once prison officials know about a serious risk of harm, they have an obligation 'to take reasonable measures to abate it.'" *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (*quoting Borello v. Allison*, 446 F.3d 742, 747 (7th Cir.2006)). In other words, prison officials are "required to refrain from placing [inmates] in harm's way gratuitously." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). It must also be noted that *respondeat superior* is not a source of liability in § 1983 actions, *see, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009), and that merely issuing a ruling on a prison grievance does not subject a prison official to constitutional tort liability. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Here, Defendant Knauer is entitled to summary judgment. Knauer is not employed at Menard and her role in the situation appears to be limited to the fact that Bentz communicated

with her by mail and that she told him to resolve the issue with his counselor. On these facts alone, Knauer cannot be found liable under § 1983.

With respect to Warden Atchinson, Bentz testified at his deposition that he spoke to Atchinson on multiple occasions on the gallery and requested that he be separated from his cellmate. In January 2013, prison officials eventually separated the two after Bentz's family members contacted the prison. While these facts may be sufficient to raise a jury issue as to whether Atchinson was deliberately indifferent to a potential risk of harm to Bentz, Bentz acknowledges that he suffered no harm. As such, his claim does not survive summary judgment. Therefore, summary judgment shall be granted as to Defendants Knauer and Atchinson as to Count 7.[7]

## Conclusion

Defendant's motion for summary judgment is hereby GRANTED in part and DENIED in part. Count 1 shall proceed against Defendants Kulich and Bebout as to the law library retaliation issue. Count 3 shall proceed against Defendants Ryan Davis, Jesse Reid, Jeff Miller, Jerry Witthoft, James Mallory, and Donald Lindenberg. Count 4 shall proceed against Defendants Ryan Davis, Jesse Reid, Jeff Miller, Justin Kempfer, James Mallory, Jerry Witthoft, and Donald Lindenberg. Count 7 shall proceed against Defendants Kent Brookman, Chad Forsting, William Reese, and Vicki Wood Payne. The following Defendants have been granted summary judgment; Richard Harrington, Salvador Godinez, Sara Johnson, Richard Moore, Douglas Lyerla, Brandon Dilday, John Touville, Robert Hughes, Ray Allen, Greg Korando,

---

[7] Defendants assert that they are entitled to summary judgment on the basis of qualified immunity as to all of Bentz's claims. However, Defendants' qualified immunity argument is not well developed, particularly as it relates to the claims currently remaining in this action. Defendants do not specifically address the law library retaliation issue, the segregation conditions of confinement claims, or the the failure to protect claims (i.e., all of the remaining claims in this case). The Court will not construct arguments on behalf of a party and will therefore not address the issue.

Christopher McClure, Michael Baker, David Johnson, Richard Ransom, Justin Snell, Susan Easton, Rebecca Cowan, Debbie Knauer, Mike Atchinson, and Lori Crafton[8] and shall be **TERMINATED** as defendants.

**IT IS SO ORDERED.**

**DATE: December 4, 2017**

                                                    **s/ Staci M. Yandle**
                                                    **STACI M. YANDLE**
                                                    **United States District Judge**

---

[8] At Bentz's deposition, he agreed to withdraw the claim against Lori Crafton.